**ACF INDUSTRIES, INCORPORATED, Appellant,**

v.

**INDUSTRIAL COMMISSION of Missouri, Donald Brown, and Division of Employment Security of Missouri, Respondents.**

No. 46894.

Supreme Court of Missouri,

En Banc.

Jan. 12, 1959.

Rehearing Denied Feb. 9, 1959.

Arnot L. Sheppard, Gentry, Bryant & Sheppard, St. Louis, for appellant.

George Schwartz, Jefferson City, for respondent Division of Employment Security.

Lloyd G. Poole, Jefferson City, for respondent Industrial Commission.

HOLLINGSWORTH, Chief Justice.

The question is whether respondent Donald A. Brown, hereinafter referred to as "claimant", is eligible for the benefits provided by the Missouri Employment Security Law, Chapter 288, RSMo 1949 and 1957 Supp., V.A.M.S. (All statutory references are to said revision.) The contention of his employer, ACF Industries, Incorporated, St. Louis, Missouri, hereinafter referred to as "appellant", is that claimant became ineligible for such benefits by reason of failure timely to report following a letter recalling him to work, which was mailed to him at his last known address. The contention of the Industrial Commission and the Division of Employment Security, hereinafter referred to

as "respondents", is that, due to the circumstances herein detailed, claimant promptly reported upon receipt of actual notice of his recall and thereby became eligible.

The appeals tribunal (consisting of one referee) found in favor of claimant. Application of appellant to the Industrial Commission for review was denied. Appellant thereupon sought judicial review in the Circuit Court of the City of St. Louis, which affirmed the findings of the appeals tribunal and accordingly rendered judgment. Upon appeal to the St. Louis Court of Appeals, the judgment of the circuit court was affirmed. 309 S.W.2d 676. Appellant's application for transfer to this court was sustained.

Claimant, a single man, worked for appellant as an electrician from June 19, 1956, to November 2, 1956, when he was laid off because of lack of work. During that period of time his place of residence was in the home of a married couple at 141 East Loretta, Lemay 23, Missouri. (Lemay, it seems, is within the postal zoning area of the City of St. Louis.) Appellant's records showed his registered address as stated. At no time prior to January 14, 1957, did claimant inform appellant nor did appellant have knowledge that he had changed his address.

From the time claimant entered appellant's employment, the latter had a contract with International Brotherhood of Electrical Workers, Local No. 1, which required claimant to become a member of the union within thirty-one days following the date of his employment. That contract provides that the union shall be the sole collective bargaining agency for all employees at the plant. At the date of his layoff claimant had paid the union initiation fee, as required by Article II, § 3(b), of the contract. Although there is a dispute as to when his employment was terminated, it is admitted that the applicable provisions of the contract were binding upon him during that period of time.

Article III, § 1, of the union contract provides:

"The Management of the Plant, * * * the direction of the working forces, including the right to hire, promote, suspend or demote, discipline or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work or for other legitimate reasons is vested exclusively in the Company. * * *"

Article IX, § 3, provides:

"*Cancellation of Seniority*. The employee's seniority shall cease if:

"(1) He quits.

"(2) He is justifiably discharged.

"(3) He is absent for five (5) work days without notifying the Company and cannot show satisfactory causes for such absence.

"(4) If he does not report within five (5) work days after being called to work, unless he furnishes a reasonable excuse for failure to report. The call shall be sufficient, if it is made by mail, addressed to employee's last place of residence as registered with the Company. * * *

"When an employee whose seniority has been broken by any of the causes mentioned in the aforegoing paragraph of this Article, is again hired by the Company, he begins as a new employee."

Article IX, § 4, deals with departmental "layoff and recall" and, while its provisions are not otherwise applicable to the issues in the instant case, the meaning of "layoff", as distinguished from an employee "quitting" or being "discharged" from his employment is made clear.

Article XXII, § 1, provides:

"*Change of Address*. All changes of address or telephone numbers must be reported to the Personnel Department at once."

Article XXII, § 3, provides:

"*Computation of Time*. For the purpose of computing the time within which any steps or action should be taken under this Agreement after notice or request by one party (or an employee) of another party (or an employee), the date of such notice or request is mailed [sic] shall control and the day following the mailing date shall be counted as the first day. * * * The United States Post Office postmark shall be conclusive evidence of the date of mailing. * *"

Following layoff by appellant, claimant, on November 12, 1956, got a job at Mercury Division of Ford Motor Company in Robertson, Missouri, which continued until January 5, 1957, when he was laid off because of lack of work. During that period (November 2, 1956, to January 5, 1957), claimant continued to reside and receive his mail at his original address, 141 East Loretta, Lemay 23, Missouri. However, to avoid the expense of driving to and from his work, he slept in a rooming house at Robertson. "About once a week" he would return to his residence on Loretta to pick up clothing and get his mail. When he was laid off on January 5, 1957, on the same day, knowing he "would have to find a different place to stay", claimant "moved in with this buddy of mine" at 2218 South Broadway, St. Louis, but he did not take with him the personal effects kept by him at his residence on East Loretta.

On Friday, January 4, 1957, appellant, in compliance with the provisions of the contract, mailed a letter addressed to claimant at his last known address (141 East Loretta, Lemay 23, Missouri), stating: "Please report for work at the employment office, Monday, January 7, 1957, at 8:00 a.m." On the same day, appellant sent by Western Union Telegraph Company a telegram addressed to claimant at 141 East

Loretta, Lemay 23, Missouri, which stated: "Report for work at employment office Monday, January 7, 1957, at 8:00 a.m." On the same day, in accord with its custom when a telegram cannot be delivered, Western Union sent a message to appellant, advising: "Your telegram January 4, Donald Brown, 141 East Loretta, Lemay 23, Missouri, is undelivered. Mr. Brown has not been home for over a week, unable to say when will be back. * * * "

On January 8, 1957, claimant filed with the Division of Employment Security his initial claim for employment benefits, in which he set forth as his employer the company for which he had been working in Robertson and gave his address as 141 E. Loretta, St. Louis 23, Mo." He testified that "about a week" after January 5 (the date on which he went to 2218 South Broadway) he directed the postoffice to change his mailing address to 2218 South Broadway.

Claimant did not go to East Loretta Street between the last week in December and January 14, 1957. The married couple, in whose home he resided at that address, knew only the "place" where he worked in Robertson and did not know the address of the rooming house at which he stayed, and apparently did not know of the sleeping arrangement made with his "buddy" at 2218 South Broadway. On January 14, 1957, he went to 141 East Loretta "to move my things" and found the letter mailed to him by the appellant on January 4th. Upon finding the letter, claimant, on that day, went to appellant's plant and asked "if the job was still open." He was told that he had been "dropped" from the seniority list and the job was filled and he "just let it go at that." Appellant's employment manager testified that he talked with claimant on the date he reported in response to the letter and told claimant that if he could "provide a statement of why he had failed to answer the recall due to illness or sufficient reason" appellant would consider his reinstatement, and claimant stated "he was out of town and let

it go at that." In any event, however, appellant considered claimant's employment terminated as of January 11, 1957, and, on January 14, 1957, employed another electrician to take his job.

Claimant testified that following layoff from his job at Robertson, he tried to find work but received no offers. He applied at four places, searched for and answered advertisements in newspapers and made inquiries. During the interim between his layoff at Robertson and January 14, 1957, he was neither "out of town" nor sick.

The finding of the appeals referee was:

"[T]he claimant did not fail without good cause to accept suitable work offered him by the employer. The language of the Law with respect to disqualifications for refusing to accept work presupposes some positive action or positive failure on the part of the claimant. Before an individual can fail to accept an offer of work he must know of the offer. One cannot fail to accept something of which he has no knowledge. The fact that the claimant may have been negligent in not seeing to it that mail addressed to him was brought to his attention cannot change the rule that an individual cannot refuse an offer of which he has no knowledge. The claimant had no knowledge of the employer's off [sic] until January 14, 1957. As soon as he learned of the offer he reported to the employer's establishment but was told that he had already been 'dropped'. In other words the offer had been withdrawn. The Referee, accordingly, finds that the claimant did not fail without good cause to accept suitable work offered him directly by an employer by whom he was formerly employed."

The following provisions of the Employment Security Law (Chapter 288) are pertinent to discussion of the finding of the appeals tribunal:

"Section 288.020. 1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, *for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.* (Emphasis ours.)

"2. This law shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment."

"288.040 (as amended). 1. A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that * * * (2) He is able to work and is available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work; * * *"

Section 288.050 (as amended Laws 1957, RSMo 1949 Cum.Supp.1957, V.A.M.S.) provides:

"1. Notwithstanding the other provisions of this law a claimant shall be disqualified for * * * benefits * * * if the deputy finds * * * (2) That he failed without good cause * * * to accept suitable work when offered him * * * by an employer by whom

the individual was formerly employed, * * * *"

"288.380 (as amended). 1. Any agreement by a worker to waive, release, or commute his rights to benefits or any other rights under this law, or under an employment security law of any other state or of the federal government shall be void. * * * *"

It is appellant's contention that (1) claimant's employment was subject to all of the terms set forth in the contract between the union and appellant; (2) that Section 288.020 of the Employment Security Law declares the public policy of Missouri to set aside the unemployment reserves provided for in the Act "to be used for the benefit of persons unemployed through no fault of their own"; (3) that the Act must be considered as a whole and construed with a view of carrying out the public policy of the state as therein declared; (4) that the union contract contains no pertinent provision violative of the Act and that the discharge of claimant on January 11, 1956, for failure to comply with its mandatory requirements was justified and his resultant unemployment was due to his own fault, thereby rendering him ineligible to receive any benefits from unemployment reserves set up by the Act for the benefit of persons unemployed through no fault of their own; and (5) that claimant, by the express provisions of the Act itself, was ineligible for the benefits provided therein because he had not actively sought work as required by Section 288.040, subd. 1(2) of the Act.

In their brief filed in the Court of Appeals, respondents contended: (1) that the decision of the Commission to the effect that claimant had not failed without good cause to apply for available suitable work offered him by appellant was supported by competent and substantial evidence; (2) that claimant did not actually get the "letter of recall" until January 14, at which time he acted promptly, which warranted a finding that he had timely accepted appel-

lant's "offer of re-employment"; (3) that since the disqualifying provisions of the Act operate to deprive a worker of benefits otherwise payable, such provisions are to be strictly construed; (4) that even if the court should hold claimant failed to accept appellant's "offer of re-employment" the court would still have to consider whether such failure was "without good cause", and that the evidence supports the finding of the commission on that issue.

In a supplemental brief filed in this court, respondents further contend: (5) that when claimant was laid off by appellant, on November 2, 1956, for an indefinite period and without promise of recall, his employment ceased, and he was not an employee employed by the company at the plant within the meaning of Section 288.-050, subd. 1(2); (6) that in any event the provisions of Article IX, § 3, of the union contract relate only to the grounds for cancellation of accrued seniority rights; (7) that claimant, having been dismissed due to lack of work, had no job with appellant which he afterwards could leave voluntarily as contended by appellant; (8) that claimant made a bona fide effort to obtain work and was therefore "actively seeking work"; (9) that the declaration of public policy set forth in the Act is only a guide to its application to be used only where ambiguity exists and cannot be used as a basis for allowance or denial of benefits; (10) that the provisions of § 288.020 stating that the law shall be liberally construed create the corollary rule that its disqualification provisions must be strictly construed; (11) that the alleged breach by claimant of the union contract constitutes no basis for denial of benefits provided by the Act; and (12) that the contract did not purport to limit or waive claimant's rights under the Act and any construction of the contract to that effect would be violative of Section 288.380 (1) of the Act.

In their brief filed in the Court of Appeals, respondents contended: "Respondents submit, in any event, that since Brown was laid off by appellant on November 2, 1956 (and in fact went to work for Mercury shortly thereafter), his obligation as an employee of appellant was clearly at an end; that Article XXII, Section 1, (of the contract) was therefore inoperative as to him." (Article XXII, § 1, of the contract is the provision requiring prompt report of all changes of address, etc.) However, in their suggestions in opposition to appellant's application for transfer to this court, respondents conceded that the "seniority" provisions of the contract were binding upon claimant by unequivocally stating: "It seems clear to us that when Brown's employment was terminated on November 2, 1956, he no longer had the responsibility (which he did have when an employee) of keeping appellant advised of any change of address. This is not to deny that Brown's rights to seniority (i. e., priority in the matter of recall) continued to be governed by the union agreement after his layoff and that the letter mailed on January 4, 1957, to his address as it appeared on appellant's records, satisfied appellant's obligation under such agreement. It is not contended by these respondents that Brown under the circumstances retained his seniority rights. What we do contend is that the seniority provisions in the contract are not decisive of the question arising under the Missouri Employment Security Law as to whether Brown failed without good cause to accept an offer of suitable work made by appellant."

What was the effect of claimant's being *laid off*? Does it mean, as respondents contend, that his employment ceased within the meaning of the contract? We think it does not.

■ The case cited by respondents in support of their contention in this respect, A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S.W.2d 184, 189, is not in point. In that case, this court called upon to define the term "employee", as used in the Act, merely said it meant "one employed by another; one who works for wages or salary in the

service of an employer." Certainly, that case does not mean that the "employee" must be actually on the job in order to be an "employee" within the meaning of the Act. Neither do the provisions of Article II, §§ 1 and 2, of the contract support such contention. Those provisions merely state that the union is the representative of the "employees at the plant." They do not change or limit the meaning of "employee" to an "employee" actually on the job at the plant.

 Not only are the words and terms of the Act to be used and construed in their plain and ordinary sense, Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77, 81, but the words and provisions of the contract are also to be construed and understood in accord with their plain and ordinary meaning, unless and until they are shown to mean something else. See 7A Mo.Digest, Contracts, 

██ The term "layoff", in the field of employment, has a well-defined meaning. See Webster's New International Dictionary, 2nd Ed. It does not mean termination of employment, but rather does it mean: "The act of laying off, esp. work or workmen; a period of being off or laid off work; a shutdown; a respite." Article IX, § 4, of the contract, although its provisions are not otherwise pertinent to the issues presented in this case, clearly demonstrates that the term "layoff" was so used and understood by appellant and the union. There the meaning of the phrase "layoff and recall" is clearly distinguished from the meaning of the phrase "if he quits" and the phrase "if he is justifiably discharged", as used in § 3 of said Article.

██ We hold that claimant, although laid off by appellant on November 2, 1956, remained an employee of appellant within the clear intendment and meaning of the contract until his discharge on January 11, 1956.

██ We next consider respondents' insistence (1) that Article IX, § 3, of the contract relates only to *seniority* and that seniority has nothing to do with recall to work of a laid-off employee, and (2) that if the provisions of § 3 are held to be applicable to recall to work, they are violative of § 288.050 of the Act. We think that "seniority", as used in employment contracts, means the status of an employee secured by length of service for a company to which certain rights attach, such as recall to work, promotion, etc. See Webster's New International Dictionary, 2nd Ed. Seniority arises out of contract, express or implied. In the absence of contract or contrary statutory provision, no employee has a right to continued employment, however long may have been his service to his employer. Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, 124. Although Article IX, § 3, of the contract vested claimant with certain preferential rights to recall to work following layoff, yet, by the further provisions of Article III, § 1, appellant reserved the right to discharge any employee for "proper cause". These reciprocal provisions were, of course, binding upon both the employer and employee. One who accepts the benefits of a contract is estopped to disaffirm its burdens. Runnels v. Lasswell, Mo.App., 219 S.W. 980, 981; John Hancock Mut. Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57, 59.

Reverting to the provisions of Article IX, § 3(4), of the contract, we find the provision that the "employee's seniority shall cease if he does not report within five days after being called to work, unless he furnishes reasonable excuse for failure" to do so; and the further clause that when seniority has been broken, and the employee "is again hired by the company, he begins as a new employee." Such language means and can only mean that the employee, who has lost his seniority, has no more right to be again employed than any other person standing at the portals of the company in quest of employment. This, for the reason that the right of sen-

iority to be recalled to work vested solely by virtue of the contract which also included as an integral part thereof the reciprocal contractual obligation assumed by the employee that he report for work within five days, unless excused for cause.

█ Respondents, however, further contend that the provisions of § 288.050 of the Act rendered claimant ineligible for benefits only if he has failed without good cause to accept suitable work when *offered* and such offer actually *had been communicated* to him. Ordinarily, of course, an offer cannot be accepted until it has been communicated to the offeree. 17 C.J.S. Contracts § 38, p. 371. However, we think that rule has no application in the instant case. In order to secure to claimant the right of recall to work following layoff (which he did not have in the absence of contract), his bargaining agent, the union, procured for him such right by inclusion of the seniority provisions set forth in Article IX of the contract. In return for that concession, appellant was granted the privilege of terminating those rights if claimant failed to report for work within five days after notice of recall was mailed to him at his last known address. The reason for and propriety of such provisions are obvious. Without them, any laid-off employee would be enabled by his own neglect or volitional refusal to receive his mail to retain the benefits of seniority granted him under the contract and at the same time deprive his employer of the right to employ another servant to render the services for which the laid-off employee was needed. Moreover, to construe the provisions of § 288.050, subd. 1(2), of the Act to require actual communication of a recall to work as provided in the contract would enable the laid-off employee to receive unemployment reserves compulsorily set aside for the benefit of persons unemployed through his own volitional fault, contrary to the declared public policy of the state as expressed in § 288.020.

█ Respondents further assert, however, that the declaration of public policy

set forth in § 288.020 of the Act is merely a guide to the interpretation and application of the law "to be used where the specific provisions as to eligibility and disqualification are ambiguous, but its general language cannot of itself be the basis for the allowance or denial of benefits", citing Tucker v. American Smelting & Refining Co., 189 Md. 250, 55 A.2d 692. In that case it was held that where there was incongruity between the general policy and particular provisions, such incongruity could be eliminated only by the legislature. The answer to that contention is that there is no incongruity between the general provisions of § 288.020 and the specific provisions of § 288.050. The provisions of the contract providing a *means* by which recall to work should conclusively be deemed to have been communicated are not in conflict with the fair intendment of provisions of § 288.050, subd. 1(2), construed in the light of § 288.020. No contention is made, and, we think, none could reasonably be made, that such a construction is unreasonable or oppressive. (As stated, respondents concede that they are reasonable and applicable to the seniority provisions of Article IX.)

█ Respondents further contend, however, that such a construction of the contract would be violative of § 288.380 of the Act. That section renders void any agreement by a worker to waive, release or commute his right to benefits under the Act. Certainly, none of the provisions of the contract, as herein construed, waive, release or commute claimant's right to benefits under the Act.

Appellant complied meticulously with its obligations under the contract. No showing is made that claimant had any reasonable excuse whatever for his failure to comply with his obligations therein. Respondents do not otherwise contend.

We hold that by reason of his own volitional fault (the breach of his contract) claimant became and was subject to discharge and, when discharged for cause on

January 11, 1956, he thereby became ineligible for benefits under the Act.

The judgment of the trial court is reversed and the cause remanded to the trial court for remand to the Industrial Commission and Division of Employment Security with directions for such further proceedings as are not inconsistent with the declarations of law herein made. See Section 288.210.

All concur.