**Jack J. TEEFEY and Shirley D. Teefey, Appellants,**

v.

**Gary HODSON, Respondent.**

No. 23152.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Albert Thomson, Kansas City, Davis, Thomson, VanDyke & Walsh, Kansas City, of counsel, for appellants.

Marion D. Waltner, Kansas City, Clarence C. Chilcott, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

Plaintiffs, husband and wife, sued to recover $2,800 which they allegedly paid to defendant and four others for a ⅓₂nd interest in an oil and gas lease on an acreage located in Marion County, Kansas. Their petition as filed was in two counts. Count 2, based upon fraudulent misrepresentations, was dismissed by plaintiffs during the trial and so we are concerned only with the first count. In this Count 1, their right to recovery is predicated upon a charge that the "security" sold to them in Missouri had not been registered under the Missouri Blue Sky Law and they were entitled under the Act to rescind the transaction and recover the purchase price, plus a reasonable attorney's fee. At the close of plaintiffs' evidence each party moved for a directed verdict. Plaintiffs' motion was denied. Defendant's motion was sustained and judgment entered for defendant. This appeal followed.

Each plaintiff testified but the testimony of Mrs. Teefey was neither extensive nor informative. We must glean the facts from the oral testimony of Mr. Jack Teefey and Gary Hodson, defendant, whom plaintiffs called and examined orally.

The decisive facts are not greatly in dispute. All of the parties are residents of Kansas City, Missouri, and the transactions took place within the state of Missouri. In 1955, the defendant Hodson helped a Mrs. Rena Slusher acquire oil leases. One of these was the Austin-Loveless lease on 320 acres in Marion County, Kansas. Mrs. Slusher assigned her interest therein, keeping an overriding ⅟₁₆th, to defendant, Mr. Farrell, Mr. Young and Mr. Hover. These five then undertook development of the leasehold. Mrs. Slusher rendered geological services, but contributed no cash; Hover acted as secretary and bookkeeper, put up no cash, but held a ⅜₂nd share; Farrell put up $5,000 in cash and received a ⅙₂nd interest. The defendant retained ⅜₂nds. The remaining interests were sold by the group—almost if not entirely by defendant—to some 17 separate purchasers, including plaintiffs. Defendant estimated that "roughly in the neighborhood of $48,000 to $50,000" was received from these sales of the nonretained interests. Plaintiff said Hodson contacted him several times about buying a share, while defendant's version was that plaintiff heard about the leasehold and wanted in. Plaintiffs' checks for the purchase were made payable to Mr. Hover. Development of the lease was begun. Two wells were brought in and plaintiffs received some money (amount not even estimated) from an oil company for oil produced therefrom. However, these wells contained salt water and if the salt water were to be eliminated, it would be necessary to drill an offset hole. Expenses were incurred in buy-

ing equipment, bringing in the wells and by reason of other activities incident to development. The available cash was spent and debts remained unpaid. In 1957, a creditor sued the leasehold owners in a Kansas court, described them as partners and secured judgment. This resulted in the leasehold and other assets being liquidated. Plaintiffs' remaining share, after liquidation by the Kansas court, amounted to $11.04, for which a check was issued. Plaintiffs received and cashed this check. In 1956, Mr. Teefey left a note at defendant's residence, requesting him to try to sell plaintiffs' interest for $3,000.

This Marion County lease was only one of many oil leaseholds in which defendant and the other four original owners were interested. Plaintiffs claimed, and there is no evidence showing otherwise, that they never had or exercised any control over the development although Mr. Teefey visited the site on a few occasions, questioned various expenses and sought to examine the accounts respecting the operation.

This is an action under "The Missouri Securities Law", commonly called the "Blue Sky Law", Sections 409.010 to 409.320, V.A.M.S., and plaintiffs' suit is particularly under Section 409.240, which provides that any sale or contract for sale of any security in violation of this chapter shall be voidable at the election of the purchaser, and that he may recover the full amount paid, together with taxable court costs and reasonable attorney's fee. Plaintiffs have elected to rescind the purchase and have tendered back to vendors the leasehold share and offered to return the $11.04.

The ⅓₂nd share in the leasehold purchased by plaintiffs from defendant was a "security" under the definition of that term as set out in Section 409.020(3) which defines the term to mean "Any note; * * * fractional undivided interest in oil, gas, or other mineral rights; * * * any certificate, contract, receipt or instrument whatsoever representing or constituting evidence of, or secured by, title to or interest in any oil,

gas or mining lease, royalty, or deed, and interest, units or shares in any such lease royalty, or deed". Gales v. Weldon, Mo., 282 S.W.2d 522; Covert v. Cross, Mo., 331 S.W.2d 576, 583–584. It is admitted that the security sold was not registered under the Act, Section 409.030, nor was defendant registered as a salesman thereunder, Section 409.140. It was stipulated that $500 was a reasonable attorney's fee.

The record does not reveal the precise reason which prompted the trial court to direct a verdict for defendant, which action, together with denial of plaintiffs' motion for directed verdict, is the sole error assigned by plaintiffs on this appeal. In support of his judgment, defendant asserts that the transaction was a "joint enterprise" and outside the Act; that plaintiffs, by receiving some money from oil produced, by retaining the liquidation distribution, and by offering or attempting to sell their interest, became estopped to elect rescission, and generally that the transaction was an "isolated transaction" within the meaning of the Act and therefore exempt from its provisions.

In Gales v. Weldon, supra, the defendants made five separate sales of fractional interests in a Louisiana oil lease and offered similar interests for sale to at least four other Missouri residents. The plaintiff brought suit to rescind the transaction and recover the purchase price. Defendants first contended that such a sale was an "isolated transaction" and exempt from the provisions of Chapter 409 by reason of the exemption specified in Section 409.050 as follows: "Except as herein provided, the provisions of this chapter shall not apply to the sale of any securities in any of the following transactions: * * * (3) In an isolated transaction in which any security is sold, offered for sale, or delivery by the owner thereof, or by his representative for the owner's account such sale or offer for sale, or delivery not being made in the course of repeated and successive transactions of a like character by such owner, * * *". In that case, as in ours, all of

the sales and attempts to sell were part of a general purpose to obtain money required to drill and equip a well on the leased land. Defendants argued, however, that the transaction had as its purpose the drilling of a well and since it was but one enterprise, it was an "isolated transaction". The Court ruled, as a matter of law, that under those facts the sale to plaintiff was not an "isolated transaction" which was exempt under the provisions of the Act.

In the Gales case, as here, the defendants next asserted that the transaction was a "joint adventure" or partnership. The Court ruled that a joint adventure is in the nature of a partnership and is usually limited to a single transaction. It declared that as a general rule, in order to constitute a joint adventure, there must be a community of interest in the accomplishment of a common purpose, a mutual right of control, a right to share in the profits and a duty to share in such losses as may be sustained. 48 C.J.S. Joint Adventures §§ 1a, 2a. The Court concluded in that case that the facts did not indicate such a joint adventure or partnership, saying: "However, none of the subsequent purchasers of undivided interests agreed to do anything except participate in the profits. They did not agree to pay any losses or make further contributions. It does not appear that they had any control over the project. They were not consulted about who would be brought into the enterprise by the sale of other fractional interests". [282 S.W.2d 527]

A similar conclusion was reached by our Supreme Court en banc in Covert v. Cross, supra. There the defendants owned three leaseholds on real estate located in Kansas and sold interests to some 30 or 40 different persons. There again it was held that in an action brought by one of these purchasers, under the Missouri Act, the defenses of "isolated transaction" or "joint enterprise" would avail defendant nothing. In addition, in that case, and again as in ours, the defendant contended that "* * * 'the doctrine of estoppel ap-

plies to this case under the Missouri Securities Law' ". On this issue the Court said, 331 S.W.2d at page 585: "We think it is clear that the theory of estoppel sought to be presented by defendants-appellants would tend to nullify and defeat the very purpose of the statute, which is clearly penal in nature. * * * The Act was passed to protect investors against their own weaknesses and to prevent the happening of such losses as are shown by this record. * * * If plaintiffs' evidence brings their case within the provisions of the statute, they are entitled to recover".

The Eighth Circuit Court of Appeals (Cross v. Pasley, 270 F.2d 88) recently considered these questions. In that case defendant had embarked on a rather extensive enterprise to discover and produce oil. A salesman was engaged to raise money by selling interests in the leases. The only thing required of a prospective purchaser was that he have the necessary funds to purchase the interest. Defendant had control over drilling and although purchasers had the right to enter the premises and view the drilling progress, they had nothing to do with its supervision. The Court reasoned there was no joint enterprise, summarily struck down the defense of estoppel and approved a recovery by plaintiff, whose action was brought under the Missouri Blue Sky Law and the Federal Securities Act. In our case defendant acted as salesman rather than engaging a third party to serve in that capacity. Our defendant claimed that although interests in the Austin-Loveless lease were sold to seventeen people, "We tried to keep it among people who could afford to lose—we were pretty choosy about who we would bring in". From the record in our case, plaintiffs agreed to do nothing except participate in the profits.

Defendant invites our attention to ACF Industries, Inc. v. Industrial Commission, Mo., 320 S.W.2d 484, and to other cases setting forth the general rule that one who accepts the benefits of a contract is estopped to disaffirm its burdens and asserts the fact

that plaintiffs received some money from oil produced, and also the $11.04 from the distribution after liquidation and offered through defendant to sell their interest for a $200 profit, estops them from electing to rescind the sale. Of course, the general rule as stated in those cases is the law, but we doubt its applicability to the facts here and certainly it will not avoid the rigorous requirements of "The Missouri Securities Law" which seem to be and which the Supreme Court has said are "clearly penal in nature".

Considering the holding by the Federal Court of Appeals for our Circuit and under these two rulings by the highest court in this state (Gales v. Weldon and Covert v. Cross, supra) interpreting the Securities Act and evaluating the defenses of "isolated transaction", "joint enterprise" and "estoppel", together with the holding that the statute is penal in nature, we think that the trial court erred in sustaining defendant's motion for directed verdict and in refusing to sustain plaintiffs' motion for directed verdict and judgment. Neither party saw fit during the trial to prove—exactly or by estimate—the amount of money which plaintiffs received from the sale of oil. We, therefore, assume it was only a nominal sum and in disposing of this appeal we shall treat this item as of no more importance than it has so far been accorded by counsel.

The cause is accordingly reversed and remanded with directions to set aside the verdict and judgment for defendant and to sustain plaintiffs' motion for directed verdict and to enter judgment for plaintiffs in the sum of $2,788.96 ($2,800, less $11.04, the liquidation item) and $500 attorney's fee.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.