BOLIN, Judge.
Henry M. White instituted suit against the Crane Company alleging his wrongful discharge from defendant’s employment and praying for severance pay, continuing wages together with penalties and attorney’s fees under LSA-R.S. 23:631, and further requesting a declaratory judgment with respect to his claimed pension benefits.
The case was first before this court on appeal from a judgment of the district court sustaining peremptory exceptions filed by defendant company on the ground that plaintiff had failed to negative his unsatisfactory conduct, the assigned cause of his discharge. This court reversed that ruling and remanded the case with instructions to allow the filing of the third supplemental and amended petition, and for further proceedings according to law and consistent with the opinion (131 So.2d 528). By our former decree we held the question of whether the employee was discharged for “unsatisfactory conduct” so as to preclude him recovering severance pay was a matter of special defense.
After remand the case was tried before a jury resulting in judgment for defendant on all issues, from which plaintiff has appealed.
The uncontroverted facts are as follows:
Henry M. White began working for the Crane Company in September, 1938 as office boy and, except for a four-year period of service with the Coast Guard, worked for the company continuously until his discharge in August, 1960, at which time he was branch manager in Shreveport.
*34 The contract of employment was verbal and without specified duration. However, there were two company bulletins filed in the proceedings below, the interpretation of which both parties agree forms the basis of this lawsuit. The parties accepted the bulletins relative to severance pay and pensions as part of the contract between the parties, the pertinent portion of each being:

“SEVERANCE PAY BULLETIN

******
“B. Non-bargaining unit regular employees age 40 but under age 60 with IS or more years service separated for any reason other than those listed in II and III shall receive 12 weeks severance pay. The employee also retains his right, subject to provision of Crane Co. Pension Plan as amended, to apply upon his attainment of age 65 for Deferred Vested Pension.
******
“HI. EMPLOYEES INELEGIBLE FOR SEVERANCE PAY BECAUSE OP CIRCUMSTANCES OF SEPARATION
******
“B. Employee is discharged for unsatisfactory conduct. (Such as dishonesty, drunkenness, insubordination, tardiness, absenteeism).

“CRANE COMPANIES’ PENSION PLAN

******
“Section II. Eligibility
******
“4. An employee who shall be laid off and not recalled within two (2) years, or whose employment shall be terminated as a result of a permanent shutdown of the plant, or a department, or subdivision thereof, of an Employing Company, and who at the end of such two (2) years or the date of his termination shall have reached his fortieth birthday and at such time shall have had fifteen (15) or more years of Continuous Service, shall be eligible, upon making application therefor as specified herein, to receive a deferred vested retirement pension determined in accordance with Section III of this Plan. * * *
******

“SECTION VI

******
“4. No Employee prior to his retirement under conditions of eligibility for pension benefits under this Plan shall have any right or interest whatsoever in or to any portion of any funds which may be paid into any pension trust or trusts established for the purpose of paying pensions and no Employee or Pensioner shall have any right to pension benefits except to the extent provided in this Plan. * * * ”
We believe the issue of plaintiff’s entitlement to severance pay rests on a judicial interpretation of the term “unsatisfactory conduct” as used in the bulletins. On this question, we have been cited to the case of Hotchkiss v. Gretna Ginnery and Compress Co., 36 La.Ann. 517 (Sup.Ct., 1884). There the plaintiff sued for salary for an entire term, alleging his discharge breached the contract of employment which was for one year conditioned on the right of the employer to dispense with employee’s services at any time, “if the business for which he is employed is not done satisfactory to the company.”
The plaintiff in the Hotchkiss case argued same was governed by LSA-C.C. art. 2749 and the cases decided thereunder and thus the standard was objective, i. e., the work must be such as to satisfy a reasonable man. The court pointed out the error of the contention and held the company had reserved *35 the right tinder the contract to discharge plaintiff if it was in fact dissatisfied with the conduct of the business and that defendant had established by its evidence the reality of its motive.
But the case at bar differs from the Hotchkiss case in two respects: first, the contract provisions are vastly different in that in the Hotchkiss case the conduct must have been satisfactory “to the company” whereas here the provision merely specifies “unsatisfactory conduct”; and second, the claim here is not for wages due under the original contract of employment but is for severance pay under a bulletin provision made part of the contract by agreement. There is no issue as to the right of defendant company to discharge Mr. White with or without cause.
This was an employment contract terminable at the will of either party, but the bulletins relative to severance pay and pensions granted additional rights or fringe benefits to employees which the company promised to pay an employee if he came within the specified categories. This plaintiff has admittedly alleged and proved his employment, his age and his discharge. The burden then shifted to defendant to allege and prove plaintiff’s ineligibility under the terms and within the meaning of the clause in the bulletin relative to discharge for unsatisfactory conduct.
It is obvious from a study of this discharge provision that some objective test must be applied in determining whether the employer had just cause to conclude the employee’s conduct was unsatisfactory. The purely subjective test enunciated in the Hotchkiss case, supra, is unappropriate for this type contract because the bulletin does not specify the conduct should be satisfactory to the “employer”. Here also it is noted the provision is followed by examples “such as dishonesty, drunkenness, insubordination, tardiness, absenteeism.” While it is not possible to arrive at any definite pattern of unsatisfactory conduct from the examples, because they range from minor to major derelictions, such examples do signify that the conduct must be deliberate. By enumerating specific examples of unsatisfactory conduct, the employer as the confecting party of the bulletin also evidenced a definite intent that some objective test should be used in defining such conduct. We think the provision means that the employee’s conduct, when viewed as a whole, must have been unsatisfactory to any reasonable person in the same position as the employer.
Defendant’s answer specified plaintiff’s alleged unsatisfactory conduct. For the sake of brevity we will not set them forth in full, but such acts may be generally stated to be:
1. Plaintiff had the habit of reading pocket mystery books during working hours.
2. Chronic tardiness and absenteeism from work without notifying .his office.
3. Uncooperative and unreasonable to subordinate employees.
4. Uncooperative with supervisors, particularly in failing to get out reports on time.
5. Disloyal to his company by unfair sales to competitors.
An exhaustive review of the evidence convinces us the last allegation of unsatisfactory conduct, disloyalty, is wholly without foundation.
We are convinced, however, that defendant affirmatively proved by a preponderance of evidence the remaining acts of unsatisfactory conduct alleged in its answer. It is true, as contended by plaintiff, that as a branch manager he was given almost unlimited authority and discretion in conducting the business and as such he was not required to have regular office hours. In other words, he did not have a “clock-punching” job. However, he was expected to have the company’s interests at heart and to devote to the business *36 enough time to show a conscientious effort to make the branch office a successful operation. The record satisfies us he was consistently tardy and absent from the office without reason.
The evidence also abundantly substantiates the charge that plaintiff almost daily read paper back novels during office hours. The position of branch manager perhaps entitled him to read books during office hours, but not to the degree shown. When plaintiff assumed the duties as branch manager of the Shreveport office, it was known that he was taking over a “sick” operation. Under these circumstances, he owed his employer the duty of expending his best efforts. Certainly it was not the time or place to be daily reading mystery novels while his employer’s business was going to ruin.
Defendant’s officers testified plaintiff was late in getting his required reports in to headquarters and no satisfactory excuse was shown for this practice.
As branch manager plaintiff had a number of employees under his direct supervision. Since the continued operation of the branch was contingent upon it making a profit, the entire office personnel had a vital interest in its success. These employees became alarmed that the branch was continually showing a financial loss. They accordingly designated one of the office force to notify headquarters, and as a result of this notification a company representative was sent to check on the situation. During the trial this representative as well as the subordinate employees uniformly testified plaintiff was rude and uncooperative to those working under him. Plaintiff attempts to lightly dimiss all such charges as the normal complaints of disgruntled employees. However, the evidence convinces us otherwise.
We see no useful purpose in burdening this record with a detailed analysis of the evidence as it relates to plaintiff’s unsatisfactory conduct. We are not faced with a case where an employee is discharged because of isolated and infrequent infractions. To the contrary, White’s record showed a definite pattern of lack of concern for Crane Company’s welfare. When viewed objectively any reasonable employer in defendant’s position would have been justified in discharging plaintiff for unsatisfactory conduct. Therefore, under the clear and unambiguous terms of the employment bulletin, he was ineligible to receive severance pay.
The portion of the bulletin relative to pensions has no applicability to plaintiff unless this court chooses to rewrite the pension provisions. Clearly here the plaintiff was “discharged”. The plan provides that persons 40 years of age with IS or more years of service with the company “who shall be laid off and not recalled within two (2) years, * * * shall be eligible, upon making application therefor as specified herein, to receive a deferred vested retirement pension determined in accordance with Section II of this Plan.”
While we have been cited to no Louisiana cases directly in point, we find no difficulty in concluding “laid off” is not synonymous with “discharged”. The term “laid off” has been generally interpreted by the courts to mean a suspension of employment and not a termination of employment. See Vol. 24, Words and Phrases, Lay Off, and the many cases cited therein.
As the language of the pension plan clearly provides the appellant is without any rights to a pension except to the extent the company expressly provided and he was not “laid off” so as to come within the plan, it necessarily follows he has no right to a pension either now or in the future.
For the reasons stated the judgment appealed from is affirmed at appellant’s cost.
Affirmed.