[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter involves the status of the Plaintiff, a former state employee, who immediately prior to his termination from his service with the State of Rhode Island held the position of Assistant Administrator for Facilities and Operations in the State's judicial branch. Pending before the Court are cross motions for summary judgment filed by Robert Johnson (hereinafter "Plaintiff"), the State of Rhode Island, and Robert Carl, individually and in his official capacity as former Director of the Department of Administration (hereinafter collectively referred to as "Defendants" or "the State.")
The State filed the initial motion in this matter and requests that this Court grant its motion for summary judgment because the Plaintiff is not entitled to invoke the protections of G.L. 1956 § 36-4-59, "Tenure in State Service," and relies primarily on our Supreme Court's reasoning in Plunkett v. State, 810 A.2d 787
(R.I. 2002). In objection to the State's motion, and in support of the cross motion, the Plaintiff argues that he is entitled to summary judgment because he had achieved "full status" under the State's merit system law, his release from State service was a result of a "layoff," and he is therefore entitled to be transferred to a "position of similar grade" within the State service pursuant to the provisions of § 36-4-59(a)(2)(ii).
 I. FACTS
The facts material to these motions are not disputed. The Plaintiff began his employment with the State of Rhode Island on February 13, 1977. At the time his employment commenced, the Plaintiff served as a research technician in the State's judiciary. Plaintiff remained in that position until February 12, 1987 when he was appointed to the position of Assistant Administrator for Facilities and Operations.[1]
Approximately ten (10) years later, on January 16, 1997, the Plaintiff submitted an "Application for 20 Year Certification" in accordance with the State's merit system law, which has been codified at § 36-4-1, et seq., of the Rhode Island General Laws. Plaintiff listed his classification on the application as "Assistant Administrator/Facilities Operations." Plaintiff's application was granted on February 14, 1997.[2]
On February 26, 2001, the current Chief Justice informed the Plaintiff that his employment was terminated. The letter documenting the termination explains that Johnson served "at the pleasure of the Chief Justice," and also states that Johnson's employment ". . . is terminated effective March 10, 2001." The Plaintiff was not afforded transfer within State service to a position of similar grade. Thereafter, on October 22, 2002, the Plaintiff initiated suit against the State. The claims set forth in Plaintiff's complaint allege that he is entitled to "be retained within the State services in a position of similar grade" pursuant to § 36-4-59 and also alleges that the State unlawfully deprived him of his property interest in continued employment in violation of 42 U.S.C. § 1983 and the Fifth andFourteenth Amendments of the United States Constitution. Based on these allegations, the Plaintiff's complaint requests preliminary and permanent injunctive relief enforcing his rights in accordance with. § 36-4-59, and also seeks an award of damages, and/or back pay, lost pension credits, vacation and sick leave, value of lost health insurance coverage, interest, costs and attorney's fees pursuant to 42 U.S.C. § 1988 and the Rhode Island Equal Access to Justice Act, G.L. 1956 § 42-92-1 et seq.
 II. STANDARD OF REVIEW
The Rhode Island Supreme Court has oft repeated the standard a motion justice must employ in ruling on summary judgment motions. "Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Association,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State,427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c). When the moving party sustains its burden "[t]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969
(R.I. 1998) (citing St. Paul Fire Marine Insurance Co. v.Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)).
In a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320
(citing Lennon v. MacGregor, 423 A.2d 820 (R.I. 1980)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is any genuine issue of material fact to be resolved. Rhode Island Hospital TrustNational Bank v. Boiteau, 119 R.I. 64, 66, 376 A.2d 323 (R.I. 1977) (citation omitted). Therefore, "when an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Rhode Island Hospital Trust NationalBank, 376 A.2d at 320 (citations omitted).
 III. ANALYSIS
The Court finds that there is no genuine issue of material fact that the Plaintiff is an appointee of the Chief Justice as an Assistant Administrator in accordance with the provisions of G.L. 1956 § 8-15-4.[3] Accordingly, such an appointee serves at the pleasure of the Chief Justice pursuant to § 8-15-4.
The State takes the position that the case of Plunkett v.State, 810 A.2d 787 (R.I. 2002), is completely dispositive of all issues raised in Plaintiff's complaint, since, in Plunkett,
the Supreme Court held that the more specific provisions of G.L. § 8-15-4 took legislative priority over the more general provisions of the State's merit system law as codified in G.L. §36-4-1, et seq. Accordingly, the State argues, the latter statute provides no protection to a judicial employee who serves at the pleasure of the Chief Justice.[4] Plaintiff, to the contrary, urges that this Court is not bound by the Plunkett
decision, in that the Plaintiff therein sought retention in his existing judicial employment, wherein the Plaintiff in this case does not contest entitlement to retention in his position as Assistant Administrator of Facilities and Operations. Rather, the Plaintiff argues that he was the subject of a "layoff," and is entitled to be retained within State service in a position of similar grade pursuant to the provisions of G.L. §36-4-59(a)(2)(ii).[5]
While the Rhode Island Supreme Court has never considered the definition of a layoff under the Merit System Law, the Court has, on at least one occasion, analyzed the definition. In Formisanov. Blue Cross of Rhode Island Blue Shield of Rhode Island,478 A.2d 167 (R.I. 1984), the Rhode Island Supreme Court was faced with the task of determining the meaning of the term "involuntary layoff" as used in § 27-19.1-1, pertaining to medical benefits for those who lose eligibility to participate. In the Formisano
case, the Rhode Island Supreme Court looked to the definition of a layoff as interpreted by other jurisdictions. Id. (citingCBS Inc. v. Int'l Photographers of the Motion PicturesIndustries, Local 644, I.A.T.S.E., 603 F.2d 1061, 1063 (2nd Cir. 1979); General Motors Corp. v. Erves, 399 Mich. 241, 253,249 N.W.2d 41, 46 (1976); Conner v. Pheonix Steel Corp.,249 A.2d 866, 869 (Del. 1969); White v. Crane Co., 147 So.2d 32, 36
(La.Ct.App. 1962)). The Rhode Island Supreme Court also citedWebster's Third New International Dictionary, which defines the verb, "lay off," as "to cease to employ [a worker] usually temporarily because of slack in production." Id. In each of the cases cited in the Formisano case, the courts defined a layoff as a temporary measure. See Conner, 249 A.2d at 869 (layoff is a suspension of work and not a termination); White,147 So.2d at 36 (layoff ordinarily includes an anticipation of being recalled); Conner, 249 A.2d at 869 (layoff is a temporary cessation with an expectation of eventual return). Perhaps theGeneral Motors case explained it best when it defined a layoff, by reference to the Michigan Employment Security Act, in the following manner:
 `[A] "layoff" . . . is a temporary dismissal by an employer which anticipates reemployment and therefore is distinguished from unemployment by reason of discharge, resignation or other permanent termination.' (Emphasis in original.)
Formisano, 478 A.2d at 169 (citing General Motors,249 N.W.2d at 46). Relying upon the previously cited precedent, the Rhode Island Supreme Court found that the statute at issue did not view those permanently terminated from employment by reason of an employer's going out of business as having been laid off.Formisano, 478 A.2d at 169.
Other state and federal cases have likewise viewed a layoff as not synonymous with a termination, with the former concept generally applying to situations involving a temporary cessation of employment. "A layoff, by definition, is not a termination of the employment relationship. The employee retains his or her status as an employee, but is placed in an `inactive' status for the period of the layoff." Giddings Lewis, Inc. v. NationalLabor Relations Board, 675 F.2d 926, 931 (7th Cir. 1982).
The United State Supreme Court in Fishgold v. Sullivan Drydock Repair Corp., 328 U.S. 275, 287, n. 11, 66 S.Ct. 1105, 1112, n. 11, 90 L.Ed. 1230, 1241, n. 11 (1946), defined the term layoff as "`A period during which a workman is temporarily dismissed or allowed to leave his work; that part or season of the year during which activity in a particular business or game is partly or completely suspended; an off-season.'" The definition espoused inFishgold, a case exploring whether a layoff was equivalent to a discharge under the Selective Service Act, was derived from theOxford English Dictionary and other Supreme Court cases, which viewed a layoff as a "temporary suspension of an employee's work" and "commonly does not affect the continuance of his status."Id. at 287 (citing National Labor Relations Board v. WatermanS.S. Co., 309 U.S. 206, 60 S.Ct. 375, 84 L.Ed. 536 (1940);North Whittier Heights Citrus Ass'n v. National Labor RelationsBoard, 109 F.2d 76, 82 (9th Cir. 1940)) The United States Supreme Court further stated that a leave of absence and a furlough were comparable to a layoff, which resulted in consequences different from those occurring after the termination of the employment relationship. Fishgold, 328 U.S. at 287,66 S.Ct. at 1112, 90 L.Ed. at 1241.
The Fishgold rationale was also adopted by the Third Circuit in Bakery Confectionery Workers' International Union v.National Biscuit Co., 177 F.2d 684, 687 (3rd Cir. 1949), in which the Court was faced with the interpretation of a collective bargaining agreement (". . . [Fishgold] had recognized the sharp distinction between a temporary suspension of an employee's work known in common and industrial parlance as a `layoff,' and `termination of the employment relationship or loss of a position.'").[6]
In this instance, the letter from the Chief Justice was unmistakable in its intent that the Plaintiff's employment in the judicial system was terminated, leaving no possible implication that the separation was to be in the nature of a layoff, either by way of temporary cessation of work, or a separation motivated by a decrease in the work force. The Plaintiff has not submitted any affidavit, or pointed to any discovery responses of record, that in any way raise a factual issue as to a decrease in work force or a temporary cessation of work. To the contrary, Plaintiff admits that the termination action form dated March 7, 2001 stated that the position vacated by the Plaintiff was to be filled, not left vacant or abolished. See Plaintiff's Memorandum at 3.
Furthermore, fundamental tenets of statutory construction mandate that the words used in a statute should be given their ordinary and literal meaning. Cocchini v. City of Providence,479 A.2d 108, 111 (R.I. 1984). The Supreme Court has also stated that it ". . . will not ascribe to the General Assembly an intent to enact legislation which is devoid of any purpose, inefficacious, or nugatory." Kingsley v. Miller, 120 R.I. 372,376, 388 A.2d 357, 360 (1978); Town of Scituate v. O'Rourke,103 R.I. 499, 239 A.2d 176 (1968). The unambiguous language of §36-4-59(a)(2)(ii) contemplates layoffs occurring in the context of "reorganization or otherwise." Id. Therefore, the General Assembly did not intend to include a termination within its definition of a layoff. If this Court were to find that the Plaintiff's termination was the statutory equivalent of a layoff, it would directly undermine the General Assembly's intent and, as the court stated in Casey v. Sundlun, would "torture the plain meaning" of the statute." 615 A.2d 481, 482.[7]
Because the Chief Justice terminated the Plaintiff's employment, the protections of § 36-4-59(a)(2)(ii) are not implicated. It has been said that "`[a] person's interest in a benefit is a "property" interest * * * if there are such rules or mutually explicit understandings that support his [or her] claim of entitlement to the benefit * * *.'" Pellegrino v. R.I. EthicsComm'n, 788 A.2d 1119 (R.I. 2002) (quoting Perry v. Sinderman,408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 580
(1972) (alterations in original)). There are no such facts to support the Plaintiff's entitlement to transfer rights under the merit system law. In the absence of a protected property interest, the Plaintiff's claims not only to statutory protection, but also to constitutional protection, must fail as a matter of law. See DiCiantis v. Wall, 795 A.2d 1121 (R.I. 2002) (explaining that to state a claim under 42 U.S.C. § 1983 a plaintiff must have, inter alia, a protected liberty or property interest); but cf. Wilkinson v. State CrimeLaboratory Com'n, 788 A.2d 1129 (R.I. 2002) (finding a protected property interest in a position entitled a state-government employee to the due process and just compensation protections of the state and federal constitutions).
 IV. CONCLUSION
After review of the evidence submitted and the well-settled law of this and other jurisdictions, this Court grants the Defendant's motion for summary judgment and denies the Plaintiff's cross motion for summary judgment.
[1] A copy of R.I. Division of Personnel form CS2A is attached to the State's motion as Exhibit B and lists Plaintiff's title as "Assistant Administrator/Facilities and Operations."
[2] A copy of Plaintiff's "Application for 20 Year Certification" is attached to the State's Motion as Exhibit C. This document evidences not only the Plaintiff's application but also the State's approval.
[3] The Plaintiff suggests, on the one hand, that there may be a factual dispute as to whether the Plaintiff, at the time of his termination, held the status of an Assistant Court Administrator under the provisions of G.L. § 8-15-4(a). The Plaintiff points to several documents to suggest that the Plaintiff was a "Senior Policy Associate" at the time of his termination. See
Defendants' Response to Admission, No. 5, wherein the State admitted that "Plaintiff's position when he was terminated was `Senior Policy Associate' according to the `termination action' form dated March 7, 2001." Defendants, on the other hand, point to the personnel forms identifying Plaintiff's job as "Assistant Administrator," and also to an organizational chart attached to their motion as Exhibit G, which purports to suggest that the position of "Senior Policy Associate/Facilities and Operations" was identical to the position of "Assistant Administrator/Facilities and Operations." See also,
Deposition of Robert C. Harrall at 6, 13-14, attached to Defendants' motion as Exhibit F. Based on the above, and viewing any conflict in the light most favorable to the Plaintiff, this Court finds there is no genuine issue of fact that Plaintiff was an Assistant Administrator at the time of his termination even though his title may have included the role of Senior Policy Associate. At any rate, even if there were an issue of fact on that point, Plaintiff concedes that it is not necessary to resolve that question, since his status under § 8-15-4 need not be reached because he is not claiming entitlement to that same position. See Plaintiff's Memorandum at 7 and 11. Accordingly, the Plaintiff concedes that this fact, even if disputed, is not "material" for Rule 56 purposes.
[4] "The plaintiff may not rely on his twenty years of service to protect him from discharge because the Chief Justice's specific statutory power to remove assistants at will prevails over the general "full status" provision, § 36-4-59(a)(1)."Plunkett, 810 A.2d at 787-788.
[5] Rhode Island General Law section 36-4-59(a)(2)(ii) states, "that in case of layoff or the abolition of a position through reorganization or otherwise, any person in that position or subject to layoff, who has full status . . . shall be retained within the state services in a position of similar grade."
[6] For additional case law citing the proposition that a layoff is not the equivalent of a termination, see Volume 24AWords and Phrases (1966) (citing ACF Industries, Inc. v.Industrial Commission, 320 S.W.2d 484, 491 (Mo. 1959) ("term `layoff' does not mean termination of employment but means act of laying off, especially work or workmen; a period of being off or laid off work; a shutdown; a respite"); Lord Mfg. Co. v.Nemenz, 65 F. Supp. 711, 723 (D.C.Pa. 1946) ("a `layoff' is a period during which a workman is temporarily dismissed or allowed to leave his work"); Irwin v. Globe Democrat Pub. Co.,368 S.W.2d 452, 455 (Mo. 1963) ("The term `layoff' in the field of employment, has a well-defined meaning. . . . It does not mean termination of employment. . . .")).
[7] The Supreme Court articulated this point in the context of determining whether the term, "abolish," as contained in §36-4-59, could pertain to the termination of one individual's employment, even though the position remained open. SeeCasey, 615 A.2d at 482.