209 A.2d 455.

STATE *vs.* DONALD R. BRANT *et al.*

APRIL 28, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

PowErs, J. This is a petition by Donald R. Brant, one of the above defendants, hereafter called the petitioner, to adjudge the warden of the adult correctional institutions, hereafter referred to as "ACI," in contempt of a superior court mittimus on the authority of which the petitioner was taken into custody by the warden. It was heard by a justice of that court who, after reviewing the evidence, entered a decree denying and dismissing the petition. The cause is before us on the petitioner's appeal therefrom.

In *Nelson* v. *Progressive Realty Corp.*, 81 R. I. 445, this court, acknowledging that contempt was ordinarily civil or criminal in character, recognized that there were instances when it partook of both characteristics. Although the superior court justice did not specifically refer to this principle, it is clear from his decision that he was aware of it and considered the proceedings before him as one of these exceptional instances. It is in such posture that we will consider the petitioner's appeal.

It is established by the evidence that on October 17, 1963 petitioner was sentenced by a superior court justice to serve a sentence of twelve years in the ACI. Pursuant to a mittimus issued the same day petitioner was delivered into the custody of the warden as provided by G. L. 1956, §13-2-21.

The evidence also discloses that when petitioner was received at the orientation unit, for which provision is made in §13-3-1, he was placed by the warden in strict confinement, referred to as administrative segregation.

It appears that thereunder an inmate is confined in a unit set off within the maximum security section of ACI and consists of two six-cell tiers. Inmates placed therein are served meals in their cells, denied industrial work, with

a corresponding loss of time off for good behavior, and are restricted to an hour's exercise each weekday in that portion of the prison yard adjoining this particular cell block. The petitioner's confinement within administrative segregation was still in effect when the instant petition was heard in January 1964.

He commenced the instant proceedings when, after the thirty-day limitation set forth in §13-3-1, he continued to be segregated despite written demand that the segregation be terminated in accordance with the following provision:

"To establish security standards which will safeguard society and which will provide for the most efficient possible rehabilitation of individual prisoners there shall be established within the division of correctional services a receiving and orientation unit which shall receive all male persons sentenced to the adult correctional institutions for a term of imprisonment of more than one (1) year. Every such person so sentenced shall be segregated for a period not to exceed thirty (30) days during which period such person shall be studied and evaluated to determine whether such person shall be a maximum. medium or minimum security risk, and to develop a program of rehabilitation, education and medical and other care as shall be deemed necessary and appropriate to prepare such person to become a useful member of society. During such period medical, psychometric and psychological examinations shall be made of such person and the results thereof, together with the nature of the offense for which such person has been committed, the previous criminal history, if any, the recommendations of the department of the attorney-general and of the sentencing court and the social history of such person shall be studied and evaluated in determining the degree of custodial care of such person, the rehabilitation program for such person, such medical or other care as may be necessary and such spiritual and religious guidance as shall be indicated by the preference of such person."

The studies and evaluation for the determination of an inmate's risk classification and rehabilitation programming referred to in the foregoing section are made by a classification board which is established by §13-3-2. It provides:

"For the purpose of such study. there shall be a classification board which shall consist of the warden who shall be chairman, the supervisor of classification, the supervisor of vocational training and education, the deputy warden in charge of custody, and the prison physician. Minutes shall be kept of all meetings and actions and recommendations of the board."

The warden testified that when he received petitioner pursuant to the mittimus issued October 17. 1963, the latter was placed in administrative segregation because the history of his conduct as an inmate on a prior commitment made such segregation advisable. The petitioner objected strenuously to this testimony, but since the issue at hand relates only to his segregation after the thirty-day period provided in §13-3-1 his objections were without relevancy.

Continuing, the warden testified that administrative segregation was for security purposes only and differed from disciplinary segregation in that inmates under administrative segregation have their own toilet facilities, reading material, radios, may receive visitors, have mailing privileges and are served the same food as inmates not so segregated. Further, he added, they may be assigned to a work detail in their area and have other privileges. It would seem from his testimony that the petitioner did not take advantage of some available privileges.

Over petitioner's objection the warden also testified that during the thirty days following petitioner's incarceration pursuant to the mittimus, meetings of the classification board were held on October 22 and November 15, 1963. The minutes of these meetings disclose that the four members of the classification board who participated unanimously voted to continue petitioner in administrative segrega-

tion. Included in the factors which led to their decision was a report from the prison psychiatrist. It recited his interview with petitioner, made psychiatric findings and concluded: "Because of his poorly controlled aggressivity I would consider him potentially dangerous in that he will react aggressively under slightest provocation. He will need continued close supervision and Maximum Custody is indicated."

The petitioner excepted to the introduction of the classification board minutes on the grounds that the prison physician, a statutory member of the board, was not present at either meeting and that, absent the attendance of all five members, the meetings were invalid and nullities. His contention in this regard is the basis for one of his reasons of appeal. His other reason, namely, that the decision of the trial justice was erroneous, rests on the same proposition.

In considering the evidence before him the trial justice stated that he construed the basic premise on which the petition was brought to be the obligation of the warden to carry out the mittimus in a manner consistent with the safekeeping and humane treatment of petitioner. He recognized that the thrust of the petition was that the warden had violated the court order by carrying out the decision of the classification board in that, absent its full complement, its action was invalid. He concluded that whatever rights petitioner might have in this regard in some other appropriate proceedings, the warden should not be adjudged guilty of contempt for complying with the findings and decision of the board. In our judgment neither the trial justice's conception of the proceedings nor his decision thereon was erroneous.

On this phase of the petition the trial justice's decision involves a determination that the validity of the classification board meetings and related issues were not before him because of the nature of the proceedings. Moreover,

there is the implication that, assuming petitioner's contention to be correct, such a holding would not justify his adjudging the warden to be in contempt of the court's mittimus.

In *Baglin* v. *Cusenier Co.*, 221 U. S. 580, it was held that one who, relying on an apparently legal justification, deviates from the terms of a decree may not be punished for contempt even though such apparent justification is subsequently judicially determined to have no merit. However, it has been held that a motion or petition to adjudge a warden or custodial officer in contempt of an order of commitment is an appropriate means to correct abuses. *Howard* v. *State*, 28 Ariz. 433; *In Re Birdsong*, 39 Fed. 599.

In these cases, however, and we find none in point where the facts are to the contrary, the confinement and treatment of the inmates were cruelly abusive of the court's orders on the face of the allegations. On the basis of the allegations in the *Howard* case, the Arizona court held that the superior court from which the mittimus issued should order the custodial officer to show cause why the alleged conditions existed, if in fact they did exist. The court concluded that if on the return it should be found that there was reasonable necessity in the course of the prison discipline for such treatment of petitioner, the rule ordering show cause should be discharged.

In the instant cause the trial justice recognized and followed the reasoning of the Arizona court although he made no reference to that decision. He reviewed the nature of petitioner's confinement and the treatment in connection therewith. In his decision he stated: "He is given the same bill of fare, the same clothes, given opportunity to have a radio, given opportunity to have some exercise, given opportunity to go to church, given opportunity to read, but he is confined because of a determination that he is potentially dangerous and has

such aggressive tendencies that he needs closer supervision and maximum custody." He concluded that although confinement is hard on any man, he could not say on the evidence before him that petitioner was subjected to such cruel and unusual treatment as to justify him in holding the warden in contempt.

We cannot say that the findings of the trial justice are clearly wrong or that he overlooked or misconceived material evidence. It follows, therefore, that his decision will not be disturbed by this court. *Goloskie* v. *LaLancette,* 91 R. I. 317.

The appeal of the petitioner Donald R. Brant is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*J. Joseph Nugent,* Attorney General, *Francis A. Kelleher,* Assistant Attorney General, for State.

*Aram K. Berberian* for petitioner Donald R. Brant.