**239 A.2d 176.**

Town of Scituate *vs.* Helen C. O'Rourke *et al.*

MARCH 4, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

500

KELLEHER, J. This is a civil action instituted by the town of Scituate through its town solicitor pursuant to G. L. 1956, §45-24-7, to enjoin the defendants' alleged violation of the zoning ordinance. It is before us on the defendants' appeal from the superior court's summary judgment which prohibited the operation of an automobile junkyard on their respective property.

The defendants, Helen C. and Peter A. O'Rourke, mother and son, own two adjoining parcels of land in Scituate. In

his testimony Peter O'Rourke conceded that since 1948 he has operated and maintained an automobile junkyard on the properties in question. From the photographs admitted into evidence at the trial, it is evident that this commercial endeavor was of substantial proportions. He also admitted that he had never applied to the town for a license even though Scituate had since 1951 an ordinance promulgated pursuant to appropriate enabling legislation[1] which required that such activities be licensed.

On December 30, 1965, the Scituate town council adopted a zoning ordinance whereby the area wherein defendants' properties lie was designated as a single-family residence zone. Some months later this present action was instituted to enjoin defendants' use of their property in violation of the zoning ordinance as an automobile junkyard and to remove therefrom all the junked automobiles, parts and secondhand articles being offered for sale or barter at this location.

The defendants admit their land has been used in the manner alleged by the town but they claim their use of the property is exempt from the prohibition of the zoning ordinance because it constitutes a legal nonconforming use.

In their appeal, defendants raise three issues for our determination. First, does the use of their property have the status of a legal nonconforming use notwithstanding the absence of any license issued by the municipality to engage in such an activity; secondly, is the Scituate ordinance governing the licensing of junkyards invalid because a literal reading of its punitive provisions discloses that it exceeds the authority contained in the state enabling act; and thirdly, is the definition of a junkyard as it appears in both the state enabling act and the Scituate ordinance so vague and standardless as to render those acts unconstitutional for the reason that they violate the 14th amendment to the

---

[1]G. L. 1956, §§5-21-1 et seq., as amended.

United States Constitution. Our answer to each question posed by defendants is in the negative. We shall examine each issue seriatim.

# I

## The Use of the Property

The defendants contend that they are not prohibited by the enactment of the 1965 zoning ordinance from allowing the property to be used for the operation of a junkyard since their enterprise qualifies as a legal nonconforming use. In support of their position defendants invite our attention to §45-24-10 which reads as follows:

> "Pre-existing uses saved.—No ordinance enacted under the authority of this chapter shall prevent or be construed to prevent the continuance of the use of any building or improvement for any purpose to which such building or improvement is lawfully devoted at the time of the enactment of such ordinance."

The Scituate zoning ordinance embodies a similar provision.

The town argues that defendants cannot bring themselves within the sheltering classification of a nonconforming use since their failure to apply for and acquire a junkyard license rendered unlawful the use of the properties in question; the town maintains that such an unlawful use of property cannot mature into a valid nonconforming use.

In countering the town's assertion, defendants claim that the Scituate ordinance which requires an automobile junkyard to be licensed is a regulatory enactment which governs only the activities conducted on their land and does not appertain to the use to which a parcel of land may be employed. In taking this position, they rely on two New Jersey cases, Scavone v. Mayor and Council, 49 N. J. Super. 423, 140 A.2d 238, and Township of Andover v. Lake, 89 N. J. Super. 313, 214 A.2d 870. In essence both cases hold that a failure to secure a license designed to regulate a certain activity will not adversely affect the status of the land

upon which such an activity is being conducted from being classified as a legal nonconforming use. As further support of their position, defendants cite the following passage from 2 Rathkopf, Law of Zoning and Planning (3d ed.), p. 58-17:

> "But where the invalidity of the use prior to the effective date of the zoning restriction lies in failure to secure a license required by an ordinance adopted pursuant to the general police power, other than a zoning ordinance or an ordinance regulating use of the land as distinguished from regulation of an activity upon land in general, it is generally held that such an invalidity does not preclude acquisition of a nonconforming use protected as against the operation of the subsequent zoning restriction."

We note that there is, however, a significant division of judicial opinion over the theory espoused in the New Jersey cases and in Rathkopf. See *Eggert* v. *Board of Appeals*, 29 Ill. 2d 591, 195 N.E.2d 164.

A nonconforming use is a particular use which does not conform to the zoning restrictions applicable to certain property but which use is protected against the restrictions because it existed lawfully prior to the effective date of the zoning ordinance and has continued unabated since that time. 2 Yokley, Zoning Law and Practice (3d ed.), §16-2, pp. 211-13; Rhyne, Municipal Law, §32-26, pp. 903-04. The diversity of opinion arises as to just what renders a pre-existing use unlawful. Rathkopf, as we have observed, is of the opinion that only a noncompliance with an ordinance which regulates the use of land will disqualify an individual's property from attaining the status of a legal nonconforming use. On the other hand, Yokley theorizes that any prior use of land in an unauthorized character or any business endeavor carried on in contravention of an ordinance unrelated to zoning is sufficient to disqualify a property owner from acquiring a legal nonconforming use. 2 Yokley, *id.*

Here we have before us an ordinance which in our opinion regulates both the use of land and the activities conducted thereon. This being so, this court is not confronted with, nor do we decide, whether the noncompliance with an ordinance unrelated to the use of land would prevent a nonconforming use from coming to fruition.

Our finding that the Scituate junkyard ordinance regulates both the use of property and the activities conducted thereon is based upon the mandates which are set forth in the enabling act[2] and incorporated in the ordinance. Among other things, the ordinance provides that no junkyard can be licensed unless it is a specific distance from a state highway or school. Moreover, the ordinance further dictates that not only must a junkyard be located more than 300 feet from any park, bathing beach, school, church or cemetery and not within ordinary view therefrom but such a commercial enterprise must also be screened from view by natural objects or fences of at least six feet in height. These restrictions, as the trial justice correctly observed, so meaningfully curtail the use to which land may be employed for junkyard purposes as to be deemed the equivalent of an ordinance which regulates the utilization of land. In fact, the use of land is controlled to such an extent by the Scituate junkyard act that it could well be designated as a quasi-zoning ordinance.

The defendants' failure to comply with the requirements of the Scituate junkyard ordinance, in our opinion, precludes them from acquiring the protective status of a valid nonconforming use. For a nonconforming use to be sanctioned, it must be lawfully established prior to the implementation of the zoning restriction or regulation. 8 McQuillin, Municipal Corporations (3d ed. rev.), §25-186, pp. 483-84. Compare *David A. Ulrich, Inc.* v. *Town of Saukville*, 7 Wis.2d 173, 96 N.W.2d 612. Clearly, therefore, hav-

---

[2]Section 5-21-4 is set forth in appendix of this opinion.

ing failed to comply with the requirements of an ordinance regulating the use as well as the activities conducted upon their land,. defendants could never have acquired a lawful nonconforming use which would entitle them to protection against the restrictions of the 1965 Scituate zoning ordinance.

## II
### The Scituate Junkyard Ordinance

The defendants' second argument concerns itself with a direct attack upon the penalty clause of the local ordinance. They chiefly contend that the local licensing ordinance is invalid for the reason that, in providing for penalties to be assessed for noncompliance therewith, the town council exceeded the authority conferred upon it by the general assembly through the enabling act.

Specifically, defendants ask us to focus our attention on sec. 12 of the Scituate ordinance which, for purposes of this analysis, may be subdivided into two parts, each of which prescribes a penalty for two distinct violations of the local law. The first part in substance provides that any person who operates a junkyard without having first acquired a license shall be subject to a fine of not more than $200 *and* a term of imprisonment for a period not exceeding six months; the second part provides that any person who operates a junkyard which fails to adhere to the standards relating to the use of land for such purposes, shall be guilty of a misdemeanor and subjects himself to another fine and/or an additional term of imprisonment.

The defendants argue that §5-21-1, as amended, of the general enabling act prescribes as punishment for violation of junkyard ordinances either a fine *or* imprisonment—but not both. By providing in its ordinance a fine and imprisonment instead of a fine or imprisonment, they assert that the Scituate town council exceeded its delegated authority; ac-

cordingly defendants urge that we declare the local junk-
yard ordinance void.

As authority in their behalf, defendants quote and cite
at length our holding in *State* v. *Krzak*, 97 R. I. 156, 196
A.2d 417. We believe, however, that *Krzak* is factually dis-
tinguishable from the present controversy. In *Krzak* the
Pawtucket city council failed to enact any penalty provi-
sion for a violation of a particular licensing ordinance. The
city contended that an omnibus penalty provision found in
the general city ordinances was meant to be superimposed
on all ordinances for which no penalties were specifically
provided. The maximum penalty contained in the omnibus
clause was in excess of the limits delegated to the cities or
towns by the general assembly. When transplanted to fill
the penal aperture in the local ordinance, it constituted a
clear ultra vires exercise of the police power. We wish to
note, however, that no such transplantation is sought here
by the town of Scituate.

First, it should be understood that the penalties provided
for in sec. 12 of the Scituate junkyard ordinance refer to
two different sections of the general enabling act which re-
late to two different and distinct misdemeanors. The first
penalty provision of sec. 12 is derived from §5-21-1, as
amended, and relates to the misdemeanor of operating a
junkyard without a license; the second penalty provision of
sec. 12 is derived from §5-21-5, as amended, which relates
to the misdemeanor of operating a junkyard in contraven-
tion of the restrictive use provisions of sec. 6 of the Scituate
ordinance. It is plainly evident from an examination of the
two legislative enactments that the second penal provision
of sec. 12 referred to above is within the authority delegated
by §5-21-5, as amended. Thus only the first penalty provi-
sion of sec. 12 requires our consideration.

The town concedes that the first penalty provision insofar
as it permits both a fine *and* imprisonment for operating a

junkyard without a license is not in conformity with the power conferred on it by §5-21-1, as amended. It contends, however, that the use of the conjunction "and" is a patent clerical error which in no manner accurately reflects the intent of the town council. Accordingly, plaintiff suggests that if we construe the ordinance by substituting the disjunctive "or" for the conjunctive "and" we would better fulfill the obvious intent of its legislative council. We believe there is merit in plaintiff's argument.

We have often said that the paramount function of the court in construing statutes and ordinances is to ascertain the intent behind their enactment and to effectuate that intendment whenever it is lawful and within the legislative competence. *Preservation Society* v. *Assessor of Taxes,* 99 R. I. 592, 209 A.2d 701; *Capaldi* v. *Liberty Tool & Gage Works, Inc.,* 99 R. I. 236, 206 A.2d 639. Moreover, we have stated before that, when possible, we shall construe ordinances so as to preserve their validity and to ensure the accomplishment of the purposes for which such acts are passed. *Nunes* v. *Town of Bristol,* 102 R. I. 729, 232 A.2d 775; *Easton* v. *Fessenden,* 65 R. I. 259, 14 A.2d 508. Relative to this aim, we have declared recently that we will not allow ourselves to be blindly enslaved to the literal reading of statutes when to do so would defeat or frustrate the evident intendment of the legislature. *Warren Education Assn.* v. *Lapan,* 103 R. I. 163, 235 A.2d 866; *Cabral* v. *Hall,* 102 R. I. 320, 230 A.2d 250.

A large majority of courts in this country have substituted one word for another in a statute when it is necessary to better fulfill the intent or purpose of its enactment. 2 Sutherland, Statutory Construction (3d ed.), §4925, p. 460. Whenever a court considers substituting one word for another in a statute, it is keenly aware of the inherent risk of such a procedure. On those rare occasions when a court chooses in the exercise of its discretion to substitute a word,

it does so with the utmost circumspection and only after due deliberation of all the consequences. *Warren Education Assn. v. Lapan, supra.* The substitution of one word for another in a legislative enactment is a delicate tool available to the judiciary, which tool, if properly and prudentially employed, does not amount to judicial legislation but is simply a method of arriving at a defectively expressed legislative intent. *Baca v. Board of County Commissioners,* 10 N. M. 438, 62 Pac. 979.

The precise issue presently before us is whether or not to grant plaintiff's request to substitute a word in the Scituate ordinance. If we refuse to substitute the word "or" for the word "and" in the first portion of sec. 12 of the Scituate ordinance, we would be dealing a fatal blow to its validity since its penal provisions would be otherwise out of line with what is called for in the enabling act. Thus, in voiding this ordinance, we would certainly stifle the legislative intent to control the operation and maintenance of automobile junkyards in Scituate. Nonetheless, we will not permit ourselves to substitute anything in an enactment unless we are virtually certain that the legislative intent would be materially served thereby.

Our research of the law in this case discloses that there has been considerable laxity on the part of legislative draftsmen in failing to distinguish between the conjunction "and" and the disjunctive "or"; so common has been this failing by the draftsmen that many courts have ruled that the two words may be used interchangeably or in certain circumstances one may be substituted for the other when necessary to maintain consistency with legislative intent. 2 Sutherland, Statutory Construction (3d ed.), §4923, p. 451. See *Earle v. Zoning Board of Review,* 96 R. I. 321, 191 A.2d 161. There are a host of instances in which courts have permitted the substitution of one word for another where the word

used in the statute is a result of an inadvertent clerical error or mistake.[3]

The finding of the trial justice that the discrepancy between §5-21-1, as amended, and the first portion of sec. 12 of the Scituate junkyard ordinance was a result of a clerical oversight or mistake is justified under the facts and circumstances of this case.

We are inclined to concur in the trial justice's finding for essentially two reasons. First, a review of the legislative history of the regulation of junkyards in Scituate discloses that the town had previously adopted a similar ordinance under an earlier enabling act which complied in every respect with the limits of authority then delegated to municipalities and towns by the general assembly. Thereafter in 1965 when the general assembly amended the prior junkyard enabling act, the Scituate town council seasonably amended their local ordinance, ostensibly for the purpose of contemporizing its features with the latest amendments of the enabling act. In 1965 the Scituate junkyard ordinance corresponded unerringly with the new enabling act in every significant detail and aspect, save for the curious difference occurring in sec. 12. These facts lend marked cogency to the trial justice's conclusion that the difference can most logically be explained by some unintentional clerical miscue.

The second, and to us the most convincing reason in support of the trial justice's finding, is the principle of statutory construction which declares that no court will ascribe to a legislature the intent to enact a law inefficacious and nugatory. See *State* v. *Haggerty*, 89 R. I. 158, 151 A.2d 382. Yet such would be the case if we were to declare here that the town council intentionally and knowingly passed an ordinance which was unquestionably invalid because it unmis-

---

[3]See 2 Sutherland, Statutory Construction (3d ed.), §4925, p. 461, n. 8, and the 1966 Cumulative Supplement to this treatise, p. 161, for an extensive list of cases permitting substitution to correct clerical error or mistake.

takably exceeded its delegated authority. See *State* v. *Krzak, supra.* The defendants have failed, as they failed below with the trial justice, to disabuse us of this conclusion. Since we cannot say that the trial justice's findings were clearly wrong, we will not disturb his decision. *State* v. *Brant,* 99 R. I. 583, 209 A.2d 455.

We are confident that by replacing the conjunctive "and" with the disjunctive "or" in the first part of sec. 12 we have effectuated the intent of the town council and have reconciled an otherwise unfathomable disaccordance between the enabling act and its derivative ordinance in Scituate. Hence, we will give to sec. 12 a purposeful, pragmatic and reasoned construction. Accordingly, therefore, sec. 12 is construed so as to read that any person operating a junkyard in Scituate without a license may be found guilty of a misdemeanor and if so submits himself to a fine *or* imprisonment—but in no event may he be both fined *and* imprisoned.

## III

### The Constitutional Issue

In their final argument defendants assail the constitutionality of the Scituate junkyard ordinance and the state enabling act on the ground that they violate the due process clause of art. XIV of the amendments to the United States Constitution. The defendants' contentions in this regard are predicated on their assertion that the definition of an automobile junkyard in both enactments is so indefinite, vague and standardless that it subjects the public to criminal prosecution without sufficient or adequate standards by which the people can avoid violation of the law.

The definition of an automobile junkyard contained in the Scituate ordinance is taken verbatim from §5-21-3, as amended, which reads:

> "5-21-3. Automobile junkyard defined.—As used in this chapter 'automobile junkyard' means a place of business where one or more unserviceable, discarded,

worn-out or junked automobiles, or bodies, engines, tires, parts or accessories thereof are gathered together."

Carrying their argument to its logical extreme, defendants maintain that the above definition of a junkyard is so excessively broad that any landowner who had on his property as little as a pair of discarded windshield wipers must necessarily, albeit unwittingly, be considered to be operating a junkyard. The defendants urge that such a vague and amorphous definition should be stricken as unconstitutional for failure to conform to the due process requirements.

In response to this contention, plaintiff implies, if not claims, that defendants have no standing to raise the constitutionality of the Scituate ordinance. The basis for this position might be found in *Highland Farms Dairy, Inc.* v. *Agnew*, 300 U. S. 608, 57 S. Ct. 549, 81 L.ed. 835, and *Smith* v. *Cahoon*, 283 U. S. 553, 51 S. Ct. 582, 75 L.ed. 1264, where it was held that when a statute, apparently valid on its face, requires the issuance of a license as a condition precedent to the practice of a trade or profession, one who is within the terms of the statute but has failed to apply is not at liberty to call into question the constitutionality of the enactment. There is on the other hand, however, respectable authority for the proposition that a person who has applied for and obtained a license is precluded from complaining of the unconstitutionality of the licensing law. See Annotation in 45 A.L.R.2d 1391, at 1400, §5(b), and cases cited therein.

Thus one who desires to test the constitutionality of a statute or ordinance requiring him to procure a license as a precondition to engaging in an occupation faces something of a procedural dilemma in setting the stage for his law suit. See 65 A.L.R.2d 660, at 665, §2(c).

While it is true that defendants have raised the constitutionality of the Scituate junkyard ordinance in a collateral proceeding, as the present litigation is only indirectly related to the licensing ordinance, we feel nonetheless con-

strained to find sufficient standing on their behalf in this case. Our decision in this regard is prompted by our belief that defendants' rights under the junkyard statute are so personally and adversely affected by this suit and are so inseparably related to its outcome that they merit standing to test the constitutionality of the ordinance. The single issue presented by this portion of defendants' arguments is whether an automobile junkyard has been adequately defined so as to comport with the due process requirements. We now address ourselves to this specific issue.

It is a proper exercise of the legislative function to incorporate in enactments definitional sections concerning the intended topics sought to be governed thereby. Most often, these definitions are of great assistance to us on those occasions where we are asked to interpret and apply the statutes. Of course, whenever the legislature chooses to define certain terms and phrases used in its enactments, they are binding on the court. 2 Sutherland, Statutory Construction (3d ed.), §4814, at 358. Courts are not prevented, however, when the constitutionality of a statute is questioned, from examining the words defined in enactments to determine whether they logically and fairly describe what purports to be defined and whether that which is delimited is in accord with the ascertained intendment of the lawmakers. *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 136 A.2d 801. In short, therefore, the definitional segments of an act must conform with the discovered purpose for which the act was intended. When there is dissonance between the two, the court, aided by sound canons of construction, will attempt to homologize the definitions found in the enactments with the legislative intent, if such is possible without the court encroaching upon the province of the legislature.

Allied with this view is our often-repeated principle of construction that statutes are not to be construed to achieve

meaningless or absurd results. *State* v. *Milne,* 95 R. I. 315, 187 A.2d 136, appeal dismissed 373 U. S. 542, 83 S.Ct. 1539, 10 L.ed.2d 687. No court will ever impute to the legislature an intent to enact statutes and ordinances devoid of logic or reason or one which achieve unreasonable consequences. *Imperial Car Rental Corp.* v. *Lussier,* 97 R. I. 168, 196 A.2d 728; *Mason* v. *Bowerman Bros., Inc.,* 95 R. I. 425, 187 A.2d 772; *Radick* v. *Zoning Board of Review,* 84 R. I. 472, 125 A.2d 105; *Zannelli* v. *DiSandro,* 84 R. I. 76, 121 A.2d 652.

In view of these rules let us now examine anew the arguments of defendants in this case. They maintain that the term automobile junkyard is so loosely defined as to include within its scope any property on which is collected a miniscule accumulation of automobile parts and accessories. Their interpretation of the ordinance, while literally correct, is in our opinion manifestly contrary to the intent of the legislature. To attribute an intent to the general assembly to classify property as a junkyard merely because there is stored thereon such innocuous items as a pair of unserviceable windshield wipers or a few discarded sparkplugs is to indulge in ludicrous imputations. No statute or ordinance will be applied literally if to do so a patently foolish and fanciful end is reached. *State* v. *Haggerty, supra.*

An appropriate illustration of reasonable and purposeful statutory construction can be found in our neighboring state of Connecticut where its supreme court was faced with interpreting a junkyard statute quite similar to the legislation under study here. In *Leach* v. *Florkosky,* 145 Conn. 490, 144 A.2d 334, landowners of nearby property sought to enjoin the owner of a tire business from operating his enterprise on the grounds that his activity of accumulating tires on his land was within the statutory definition of a junkyard; and that no license for such purpose had ever been issued to the defendant. The court in *Leach* refused to extend the Connecticut junkyard statute to include the de-

fendant's business and declared that, while strict adherence to the letter of the statute might seem to require inclusion of the defendant's premises, a practical construction of the legislative intent should prevail over the literal sense and precise letter of the act.

We concur in the reasoning and law of the *Leach* decision. The junkyard enactment for Scituate was plainly intended to regulate commercial junkyards or properties on which there is stored more than a token accumulation of automobiles, parts and accessories; it is manifestly certain that it was never intended to be susceptible to the interpretation suggested here by defendants.

It is not fatal to the constitutionality of an act that standards are not prescribed in great detail so long as a statute is adaptable to reasonable and practical construction. See *Clapp* v. *Ulbrich,* 140 Conn. 637, 103 A.2d 195.

When given a regulatory statute enacted in the valid exercise of the state's police power, any questions as to the wisdom of the act under study or the means by which sound public purposes are accomplished, are matters outside our competence and lie solely within the province of the legislature. *State* v. *Campbell,* 95 R. I. 370, 187 A.2d 543; 16 Am. Jur.2d, Constitutional Law, §164, p. 374.

The defendants' appeal is denied and dismissed. The summary judgment for the plaintiff is affirmed.

Petition for reargument is denied.

## APPENDIX

"5-21-4. Conditions required.—No license shall be granted for an automobile junkyard under §5-21-1 unless:

"(a) it is to be operated and maintained entirely within a building; or unless

"(b) it is to be operated and maintained exclusively for the purpose of salvaging the value as scrap of the material collected, as opposed to reselling parts to be used for the purpose for which they were originally manufactured, and is to be located in a built-up industrial area, or contiguous

to a railroad siding, or on or contiguous to docking facilities; or unless

"(c) it is:

"(1) more than one thousand (1,000) feet from the nearest edge of any highway on the interstate or primary system.

"(2) more than six hundred (600) feet from any other state highway; and

"(3) more than three hundred (300) feet from any park, bathing beach, playground, school, church or cemetery and is not within ordinary view therefrom; and

"(4) screened from view either by natural objects or well-constructed and properly maintained fences at least six (6) feet high acceptable to said city or town and in accordance with regulations as promulgated by the director of public works and as specified on said license."

*Gorham & Gorham, John Gorham,* for plaintiff.

*Charles A. Curran, Harold I. Kessler,* for defendants.