256 A.2d 479.

RHODE ISLAND TURNPIKE AND BRIDGE AUTHORITY *vs.* TOWN OF JAMESTOWN, *et al.*

AUGUST 1, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This petition for declaratory judgment was commenced July 11, 1967, by the Rhode Island Turnpike and Bridge Authority (Turnpike Authority) against the following defendants: Town of Jamestown (Town); Jamestown and Newport Ferry Company (Company); Rhode Island Hospital Trust Company (Hospital Trust), Trustee for holders of certain revenue bonds of the Turnpike Authority under an indenture of trust with the Turnpike Authority dated December 1, 1965; Industrial National Bank of Rhode Island (Industrial), Trustee for holders of certain revenue bonds of the Turnpike Authority guaranteed by the State of Rhode Island under an indenture of trust with the Turnpike Authority dated December 1, 1965; John Sherman as representative and on behalf of retired employees of the Ferry Company; and Herbert F. DeSimone, Attorney General for the State of Rhode Island.

The plaintiff asks that the court adjudge inter alia: (1) that Ferry Company does not have or own any franchise or right to operate ferries between Jamestown and Newport; (2) that the Turnpike Authority is not required to deposit

the sum of $250,000 or any part thereof to the credit of the Town as provided in G. L. 1956, §24-12-22, and §24-12-24; and (3) that said §§24-12-22 and 24-12-24 of the G. L. 1956 are null and void.

The defendant Company and defendant Sherman filed two counterclaims:

(1) Ferry Company's first counterclaim asks the court to require the Turnpike Authority to create the Franchise Fund by depositing the sum of $250,000 forthwith in a bank in Newport or Providence for the credit of the Town, said sum to be held by the bank for the benefit of the Town until the Newport Bridge is open for traffic.

(2) The second counterclaim asks the court to require plaintiff to create a Severance Benefit Account, by depositing forthwith the sum of $250,000 in a bank as required by §24-12-48, in the name of the Company, to be held by said bank until the Newport Bridge is open for traffic; the counterclaim further asks the court to adjudge that upon the opening of the Newport Bridge for traffic, the Ferry Company pay from the Severance Benefit Account the benefits required by statute.

The Town filed an answer seeking affirmative relief with respect to the Franchise Fund similar to that claimed in defendant Ferry Company's first counterclaim. Pleadings by Industrial and Hospital Trust were duly filed, but need not be summarized here.

The record before the court includes a stipulation of facts executed by all parties and filed March 22, 1968, and a further stipulation filed March 26, 1968, both with exhibits attached. The matter was heard before a justice of the superior court sitting at Newport on May 14, 1968 and was further heard in Newport on July 22, 1968, for arguments on the proposed form of findings and judgments.

The trial justice separated the issues raised by the Ferry Company's second counterclaim with respect to the Sever-

ance Benefit Account from the issues relating to the Franchise Fund pursuant to and in compliance with the provisions of rule 42(b) of the superior court rules of civil procedure.

With respect to the Severance Benefit Account, the trial justice entered an interlocutory order on October 29, 1968, which held in abeyance, until such time as the Newport Bridge is open for traffic, the questions of whether the Severance Benefit Account should be established, the source of the fund, and the proper recipients of benefits therefrom.

With respect to the Franchise Fund the trial justice made findings of fact and stated conclusions of law based thereon. Included among the findings of fact are the following:

"8. That since August 9, 1956, the Jamestown and Newport Ferry Company has had no duties or operations of any kind except to receive the ten (10) consecutive annual payments of $27,000 on or before the first of August of each year, commencing August 1, 1956, from the State of Rhode Island pursuant to the provisions of Chapter 3771 of the Public Laws of 1956 and pay over and transmit said payments as received to the Town of Jamestown for the purpose of paying the indebtedness of the Town previously incurred for said Company; and since August 1, 1965, the date of the last annual payment of $27,000 by the State of Rhode Island, said Company has had no duties or operations of any kind.

"9. That said Company has not operated any ferries or ferry service between Jamestown and Newport, or elsewhere, since May 31, 1951.

"10. That said Company permanently released and transferred its franchises and rights to operate ferries, whether granted to it in its original charter or otherwise, to the Jamestown Ferry Authority by its voluntary acceptance on May 18, 1956 of the provisions of said Chapter 3771 of the Public Laws of 1956, and the sale of its physical assets on August 9, 1956."

Based on the trial justice's findings of fact and conclu-

sions of law, a final judgment was entered on October 28, 1968, providing as follows:

"* * * it is ORDERED AND ADJUDGED:

"1. That the Jamestown and Newport Ferry Company does not have or own any franchises and rights to operate ferries as defined in Section 1 (e) of said Chapter 12 of Title 24.

"2. That said Company has been fully repaid and compensated by the State of Rhode Island through its instrumentality, the Jamestown Ferry Authority, for all of its indebtedness owed to the Town of Jamestown incurred for the operation of the ferry services by said Company.

"3. That said Town has been fully repaid and compensated by the State of Rhode Island through its instrumentality, the Jamestown Ferry Authority, to the extent of the indebtedness and liability of said Town incurred on account of ferry operations of said Company.

"4. That the Rhode Island Turnpike and Bridge Authority is not required to deposit the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) or any part thereof to the credit of the Town as provided in said Sections 22 and 24 from the Construction Fund held by the Rhode Island Hospital Trust Company as Trustee under the Trust Agreement entered into with said Turnpike Authority on December 1, 1965 or from any other funds belonging to said Turnpike Authority.

"5. That the Rhode Island Hospital Trust Company shall continue to pay from the Construction Fund held by it as Trustee under the Trust Agreement dated December 1, 1965, such other amounts as the Authority may from time to time requisition in accordance with Section 405 of said Agreement.

"6. That said Section 22 and Section 24 are null and void and of no effect.

"7. That said Company has been de facto dissolved and its Charter surrendered by reason of the full acceptance of the provisions of Chapter 3771 of the Public Laws of 1956 by said Company on May 18, 1956 and

by said Town on June 2nd, 1956 and by reason of the transfer and sale of all of the Company's physical assets to the Jamestown Ferry Authority on August 9, 1956."

The matter is before us on the appeals of defendant Ferry Company and defendant Town.

### Relevant Statutes

The statutes involved in this appeal are G. L. 1956, §§24-12-22 and 24-12-24. Chapter 24-12, as amended, was first enacted by P. L. 1954, chap. 3390, (The Turnpike Act). The relevant sections of the act, as amended, provide as follows:

"24-12-22. Purchase of Jamestown-Newport ferry franchise.—In the event revenue bonds shall be issued in an amount estimated to be sufficient with any other available funds to pay the cost of constructing the Newport bridge and opening said bridge for traffic, there shall be deposited with a bank or banks in the city of Newport or in the city of Providence for the credit of a special account in the name of the town of Jamestown, the sum of two hundred fifty thousand dollars ($250,000) as the cost of the ferry franchise, and the money so deposited shall be held by said bank or banks in the name of the town of Jamestown for the benefit of said town until such time as said Newport bridge shall be open for traffic. Upon such opening the ferry franchise shall be transferred to the authority, and thereafter in consideration of the transfer of said ferry franchise, the money so deposited shall be applied, to the extent necessary, to the retirement of the outstanding bonded indebtedness of the town of Jamestown incurred on account of ferry operations conducted by the Jamestown and Newport Ferry Company and any balance of the amount so deposited shall be paid to the treasurer of the town of Jamestown."

"24-12-24. Pension fund for ferry company employees.—The town of Jamestown, by vote of the qualified electors of said town at any special or annual financial town meeting, is hereby authorized and empowered to

use all or any part of any balance of said two hundred fifty thousand dollars ($250,000) paid to said town together with the proceeds realized from the sale or lease of any of the other assets of the Jamestown and Newport Ferry Company for the establishment of a pension fund for the care of retired employees of said Jamestown and Newport Ferry Company."

The statute first providing for payment of $250,000 to the Town "as the cost of the ferry franchise" was P. L. 1948, chap. 2152, the act which created the Narragansett Bay Bridge Authority. The act was repealed by the act creating the Turnpike Authority, P. L. 1954, chap. 3390, sec. 20. The provision relating to payment of $250,000 to the Town of Jamestown "as the cost of the ferry franchise" was included in sec. 7(c) of the Turnpike Act of 1954, and, as continued in the Turnpike Act, is now found in sec. 22 of the act, quoted above as last reenacted by P. L. 1967, chap. 183.

## The Facts

The stipulated facts and the exhibits disclose the following pertinent facts. The Ferry Company incorporated by a special act of the general assembly in May 1873, operated ferry service between Jamestown and Newport from 1873 to 1951 under an exclusive franchise granted by the general assembly. The company was wholly owned by the Town. During this period the Town either loaned the company funds or guaranteed loans to the company for its operation of the ferry service.

In 1948 the general assembly enacted P. L. 1948, chap. 2152, creating the Narragansett Bay Bridge Authority. This act contained the original provision that if any bonds were issued for the construction of the Newport Bridge, $250,000 must be paid to the Town as the cost of the company franchise to help it pay off its ferry-connected indebtedness and provisionally to establish a pension fund for retired company employees.

By 1951 the company was being operated at a loss and the Town was no longer willing to lend money to the company to enable it to operate the ferry service. As a result of this, the Jamestown Ferry Authority was created by P. L. 1951, chap. 2674. The Authority was empowered to lease or acquire from the company, for 15 years, any and all of the assets of the company and to operate the ferry service. The Authority was also empowered to release assets held under the lease, and not deemed essential to the operation of the ferry, to the company so that the company could sell the assets and release its indebtedness. By lease dated May 31, 1951, the company leased to the Authority its ferry boats, real estate and tangible personal property for a period of 15 years. The company employees also then became state employees and were embraced into the state civil service and retirement system.

In 1954, pursuant to chap. 3390 of the public laws, the Rhode Island Turnpike and Bridge Authority was created for the purpose of constructing turnpikes and bridges by the issuance of bonds. The Narragansett Bay Bridge Authority, which had been unable to arrange financing for the Newport Bridge was abolished by the 1954 act, but the provision for the payment of $250,000 Franchise Fund to the Town was retained in precisely the same language in the new act where it still remains. One of the projects of the Turnpike Authority is the Newport Bridge. Section 7(c) of chap. 3390, P. L. of 1954 provides that if revenue bonds are issued to pay the cost of the Newport Bridge there shall be deposited with a bank in the City of Newport or Providence for a special account for the Town of Jamestown, $250,000 as the cost of the ferry franchise. The money so deposited shall be held in the name of the Town for the benefit of said Town until the Newport Bridge opens for traffic. Upon the opening of the bridge, the ferry franchise shall be transferred to the Turnpike Authority and

in consideration of such transfer of said ferry franchise, the money so deposited shall be applied, to the extent necessary, to the retirement of the outstanding bonded indebtedness of the Town incurred on account of ferry operations conducted by the Company and any balance of the amount so deposited shall be paid to the treasurer of the Town.

The Town is authorized and empowered to use any or all of the $250,000 paid to said Town together with the proceeds realized from the sale or lease of any of the other assets of the Company for the establishment of a pension fund for the retired employees of the Company.

Section 2(e) of chap. 3390 of the P. L. 1954, defines "ferry franchise" as the existing franchises and rights to operate ferries belonging to the Company, but not including any other intangible personal property or real estate or tangible personal property of said corporation which shall remain the property of said corporation.

In 1956, chap. 2674 of P. L. 1951, was amended by chap. 3771 of the P. L. of Rhode Island 1956. Sec. 3(b) of chap. 3771 provided that

> "* * * prior to August 1, 1956, if the company delivers to the authority a written offer to sell the ferry boats Governor Carr and Hammonton and all real estate and tangible personal property now owned by the company for the sum of two hundred seventy thousand dollars ($270,000) * * * the authority is authorized and directed to purchase from the company said ferry boats, real estate and tangible personal property upon such terms."

The $270,000 was to be appropriated by the general assembly and paid out of the state treasury. See P. L. 1956, chap. 3771, sec. 3(c).

Pursuant to chap. 3771, on August 9, 1956, the Company sold, for the sum of $270,000, to the Authority, the ferry boats "Governor Carr" and "Hammonton," and all real estate and tangible personal property then owned by the

company. The 15-year lease was thereby terminated and the ferry company has not operated ferries nor engaged in any business of any kind since 1951; nor has the Company owned any land or wharves since August 9, 1956. The sum of $270,000 was approximately the amount of money due from the Company to the Town for monies loaned by the Town to the Company. This money was paid to the Company in 10 annual installments of $27,000 beginning on August 1, 1956. As said annual sums of $27,000 were received by the Company, they were paid over to the Town to be used for payment of the Town's indebtedness on behalf of the Company.

In 1958, pursuant to chap. 195 of the P. L. of 1958, the Authority was abolished and the powers, rights, duties and functions of the authority were transferred to and vested in the State Director of Public Works.

Newport Bridge bonds were issued by the plaintiff in December 1965, and construction began immediately thereafter.

In 1967, because of serious doubts whether it must pay and establish the Franchise Fund, the Turnpike Authority commenced the present action for a declaratory judgment praying that sec. 7 of chap. 3390 of the P. L. of 1954, now G. L. 1956, §§24-12-22 and 24-12-24, as amended, be declared void.

### Questions Raised by Defendants' Appeals

The question raised by these appeals is whether the following portions of the judgment are in error, namely, that the Ferry Company did not have or own a franchise to operate ferries; that Turnpike Authority was not required to deposit the sum of $250,000 or any part thereof to the credit of the Town as provided in the Turnpike Act; that secs. 22 and 24 of the Turnpike Act are null and void; and that the Ferry Company has been "de facto" dissolved and its charter surrendered.

The parties have briefed their respective contentions at great length. We shall summarize only those portions of their briefs and oral arguments which we believe necessary to a determination of the issues before us.

### The Plaintiff's Contentions

The plaintiff contends that the Ferry Company, if it still exists, no longer has any franchise; that the franchise has terminated because the company disposed of the real estate to which it was attached and because the company abandoned or ceased to operate the ferries; and that the franchise was specifically, permanently and voluntarily transferred from the company to the authority with the approval of the Town when the company and the Town accepted the provisions of P. L. 1956, chap. 3771. The plaintiff further contends that the Ferry Company is no longer in existence; that the general assembly never intended §§24-12-22 and 24-12-24 to be effective after the company sold its assets to the authority in 1956; that the primary purpose for the enactment of §§24-12-22 and 24-12-24, as well as their predecessor, sec. 4 of chap. 2152 of P. L. 1948, was to compensate the Town for the debt it had incurred for the Ferry Company; that the company was substantially compensated for all its assets, including its franchise, and the Town has been substantially repaid for its ferry indebtedness; and, finally, that the Ferry Company employees are now part of the state civil service and retirement system.

In other words, plaintiff contends that the enactment of P. L. 1954, chap. 3390, sec. 7(c) and the $250,000 payment for the ferry franchise was intended to liquidate the indebtedness of the company to the Town; that when the Town received payment of $270,000 pursuant to P. L. 1956, chap. 3771, sec. 3(b), (c), the debt to the Town was liquidated and the primary purpose of §§24-12-22 and 24-12-24, and of their predecessor statutes was accomplished; that the

ferry franchise is now vested in the State Director of Public Works in accordance with the provisions of P. L. 1958, chap. 195; that P. L. 1956, chap. 3771, secs. 3(b), (c), and P. L. 1958, chap. 195, impliedly repeal P. L. 1954, chap. 3390, sec. 7(c) and that the provisions in question have been retained in §§24-12-22 and 24-12-24 by mere inadvertence. The plaintiff concludes that the meanings of §§24-12-22 and 24-12-24 are clear, but that they were enacted for a factual and legal situation existing in 1948, not 1968; that they now have no application to present conditions because of changed circumstances since their original enactment and because subsequent legislation designed to accomplish the same results has been completely effective.

## The Ferry Company's Contentions

The company contends in substance that the portions of the superior court judgment relating to compensation of the Ferry Company by the state and compensation of the Town by the state are immaterial to the main issues in this case; that when the legislature amended and reenacted secs. 22 and 24 of the Turnpike Act in the 1960's, it was aware of its own enactments in the 1950's providing for such compensation; that the legislature has never taken the franchise from the Ferry Company by amendment of its charter; and that the Ferry Company has never voluntarily transferred or attempted to transfer its franchise. The company further contends that the events and transactions which occurred in 1956, when the company transferred certain of its assets to the Ferry Authority, did not include the franchise and did not include any intangible personal property; that the legislature did not take the franchise from the Ferry Company by implication through enactment in the 1950's giving the Ferry Authority, and later the state, the right to operate a ferry between Newport and Jamestown and authorizing the transfer of certain Ferry Company assets in 1956; and that the foregoing con-

clusion is contradicted by the fact that all the events and transactions upon which plaintiff relies occurred prior to January 1, 1960.

The company points out that since January 1, 1960, the legislature has amended P. L. 1954, chap. 3390 on numerous occasions; that the entire chapter was reenacted and declared to be in full force and effect by P. L. 1967, chap. 183; that the legislature has never deleted the requirement that the Authority pay the Town $250,000; and that the definition of "ferry franchise" appearing in §24-12-1(e) has continued in the Turnpike Act in its present form since 1954.

The company argues that the history of this legislation shows that the general assembly continually considered secs. 22, 23 and 24 of the Turnpike Act, by amending said sections and reenacting them; that such action by the legislature with respect to the three sections relating to the ferry franchise demonstrates that it regarded the ferry franchise as still in existence; and that it is wrong to presume that the legislature was unaware of its own legislation or of the meaning of its enactments. The company cites and relies on *Ewing* v. *Frank,* 103 R. I. 96, 234 A.2d 840, and *Gamba* v. *Testa's Auto Body Works, Inc.,* 103 R. I. 366, 238 A.2d 618. As we have already pointed out the company also urges that the superior court erred in its judgment that the Ferry Company has been "de facto" dissolved and its charter surrendered. The sum and substance of the company's position is that the language of the sections in question is clear; that the question of the wisdom of the legislation is a legislative matter; that under the clear language of §§24-12-22 and 24-12-24, the company still retains its franchise, and that therefore the franchise fund must be paid to the Town.

### The Town's Contentions

Although the Town admits that the company has no

franchise, it contends that the fund must still be paid to it because of the specific language of the statute. It argues that the language of P. L. 1954, chap. 3390, sec. 7(c), as amended, is clear; that sec. 7(c) continues in effect and has not been impliedly repealed; that the legislature has amended P. L. 1954, chap. 3390 on numerous occasions and never deleted the requirement that the Authority pay the Town $250,000; that the legislature in its wisdom desired the Town to receive a $250,000 payment when ferry service terminated and the bridge was opened for traffic; and that the provisions of the law should be fulfilled for the benefit of the Town. With the exception of the concession that the company does not now have the franchise and that it is with the Director of the State Department of Public Works, the contentions of the Town are substantially the same as those of the Ferry Company.

However, the Town also argues that if there is any ambiguity in the statute it is in the definition of "ferry franchise" and that where there is an ambiguity the court should ascertain the intent of the legislature. On this issue the Town contends that the legislature believed that the loss of ferry service would affect the financial and economic stability of the Town and that it foresaw the problems that would occur when the largest employer in the Town ceased operations. The Town further argues that it is apparent from the provisions of the act as a whole that the legislature intended to insulate the Town from such economic upheaval and for that reason provided that the $250,000 to the Town could be used for a pension fund or for whatever other use the Town deemed necessary to make up for the economic harm that would come to the Town on the opening of the Newport Bridge.

To summarize, the defendants contend that plaintiff has not overcome the presumption that the legislature acted with full knowledge of its prior enactments when it amend-

ed and reenacted sec. 22 and continued to provide for a payment of $250,000 to the Town. The Town also cites *Ewing* v. *Frank, Gamba* v. *Testa's Auto Body Works, Inc.,* both *supra,* and *Town of Scituate* v. *O'Rourke,* 103 R. I. 499, 239 A.2d 176, and other cases which discuss the rules of statutory construction.

After examining the entire record and considering all the contentions of the interested parties we have concluded that the findings of fact on which the judgment rests are supported by the evidence; that the conclusions of law set forth in the judgment appealed from are correct; and that the judgment must be affirmed.

A repetition of the factual background and the pertinent legislative history is not called for. We have discussed enough of the facts to show that one of the main purposes of providing for the payment of the $250,000 to the Town was to reimburse it for expenditures made in running, or attempting to run, the ferry service through the Ferry Company whose stock was owned by the Town. Since 1951, when it leased its ferries, real estate and other personal property to the Ferry Authority, the company has not operated a ferry. The undisputed evidence is that the Ferry Authority, as lessee, operated the ferry service until 1956, when, as a result of the 1956 act, the company sold its assets to the Ferry Authority for $270,000. Pursuant to P. L. 1956, chap. 3771, sec. 3(e), this sale included the right to operate the ferry service. The Ferry Company employees had already become state employees and been embraced into the state civil service and retirement system.

Section 24-12-22, specifically provides:

"* * * there shall be deposited with a bank or banks * * * for the credit of a special account in the name of the town of Jamestown, the sum of two hundred fifty thousand dollars ($250,000) as the cost of the ferry franchise, and the money so deposited shall be held by said bank or banks in the name of the town * * * for

the benefit of said town until such time as said Newport bridge shall be open for traffic. Upon such opening the ferry franchise shall be transferred to the authority, and thereafter *in consideration of the transfer of said ferry franchise,* the money so deposited shall be applied * * *." (emphasis ours)

Since 1956 the Ferry Company has had no business activity except to collect the 10 annual payments of $27,000, provided for in the 1956 act, from the state and pay them over to the Town, the sole stockholder of the Ferry Company. The final payment was made in 1965. Neither the Town nor the Ferry Company has the franchise now. The Town admits it does not have it and concedes that the franchise is now with the State Director of Public Works. The legislative intent to assist the Town in eliminating its ferry-connected indebtedness has been accomplished as the result of the 1956 sale. No further payment is due to the Town because one of the conditions of the payment, namely, the transfer of the franchise, cannot be met. The franchise, that is, the exclusive right to operate the ferry service was transferred to the Ferry Authority in 1956, and to the State Director of Public Works in 1958.

We are cognizant of our decisions in *Ewing, Gamba,* and *Town of Scituate,* all *supra,* but conclude that they are not applicable here. In view of the fact that the legislative purpose of providing for the payment in question to the Town has been accomplished by the payment of $270,000 to the Town, we come to the conclusion that §§24-12-22 and 24-12-24 are null and void.

The judgment is affirmed.

*W. Ward Harvey, Edward T. Hogan,* for R. I. Turnpike and Bridge Authority, plaintiff.

*George M. Vetter, Jr.,* for Appellee Industrial National Bank of Rhode Island; *William M. Sloan* and *Louise Dur-*

*fee,* for Rhode Island Hospital Trust Company; *Andrew P. Quinn & Jerome P. Spunt,* for the Jamestown and Newport Ferry Company; *Arthur W. Murphy,* Town Solicitor, for the Town of Jamestown, defendants.