[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Zoning Board of Review of the Town of New Shoreham. This case was transferred from Washington County to Providence County pursuant to an administrative order issued by Presiding Justice Joseph F. Rodgers Jr. of the Superior court on December 2, 1992. The plaintiff here seeks reversal of the Zoning Board's June 27, 1989 decision denying the plaintiff's appeal of a cease and desist order issued by the town building inspector on April 14, 1989. Jurisdiction in this Court is pursuant to Rhode Island General Laws 1956 (1988 Reenactment) § 45-24-20.
I. Case Travel/Facts
Timothy McCabe, (plaintiff), is the record owner of a 2 1/2 acre parcel of land located on West Side Road in the Town of New Shoreham, Rhode Island. This parcel is designated as Lot No. 58 on Plat No. 14 and is zoned Residential A, which under the New Shoreham Town Zoning Ordinance defines as accessory uses, farming, home occupations and professions and single family dwelling units. The parcel presently contains three structures: a residential home, a sauna house, and a seven stall horse barn. On May 3, 1989 the plaintiff filed an application with the Zoning Board of Review of the Town of New Shoreham (the Board) requesting that a cease and desist order issued to plaintiff on April 14, 1989 by the Town of New Shoreham building inspector be overturned. This cease and desist order commanded the plaintiff to cease stabling horses on his property and to cease operating a trial riding business from this residential location. The Board conducted an advertised public hearing on the application on June 26, 1989. At this meeting both the plaintiff and many remonstrants presented evidence in support of and in opposition to the plaintiff's appeal which this Court will briefly summarize.
The plaintiff testified on his own behalf. The plaintiff stated that he originally moved to the property in question in 1985, at which time he began to consider the possibility of conducting horse drawn buggy rides and hay rides on Block Island. His original plan was to operate these rides from the Hotel Manisses and keep the horses on his land during off business hours. In pursuit of this venture, the plaintiff appeared before the New Shoreham Town Council seeking approval to operate from this location, and was subsequently granted a license for this purpose. Additionally, the plaintiff alleged the Town Council informed him that if he chose to run trail rides he would not need a license to do so.
The plaintiff's hay and buggy ride business at the Hotel Manisses never came to fruition. However, in the spring of 1987, the plaintiff built a seven stall barn, began stabling horses, and thereafter started running a trial riding business off his own land. These trail rides would begin at the plaintiff's barn, continue onto a path covering 10 acres of abutting land, and conclude back on his property. The plaintiff additionally testified that the owners of the 10 acres of abutting land had given him permission to use said land for this purpose.
This activity continued through most of June, 1987. However, at the end of that month, the plaintiff was issued a cease and desist order (the first cease and desist order) from the town building inspector which commanded him to stop running the trail rides from his land. The plaintiff appealed this order to the Board. However, the order was upheld in August of 1987 and no appeal was taken. After the 1987 decision was issued, the plaintiff initially stopped running trail rides from his land. However, he did testify that in the few weeks prior to the hearing before the Board in 1989, he had resumed running such rides from his land. The plaintiff additionally stated that he continued to stable horses in his barn after the decision of the Board in 1987.
In August of 1988, the plaintiff began conducting trail rides from a location known as Champlin's Marina. As part of this operation, the plaintiff would trailer the horses to that location, conduct the rides, and then trailer the horses back to his barn after a business day was complete. The plaintiff testified that all of the business activities of the operation, (the actual rides and the collection of money, etc.) took place at Champlins, and that the only activity which took place on his land was the stabling of the horses after business hours. The plaintiff additionally stated that before he resumed this operation he sought the permission of the defendant Board which informed him that such a decision was within the discretion of the building inspector. Further, the plaintiff testified that the building inspector told him that he had permission to conduct these rides from Champlins.
The plaintiff continued operating these rides from Champlins through the end of September of 1988. Thereafter, however, in April of 1989, the plaintiff was issued a second cease and desist order which commanded him to stop stabling horses on his property and to stop running trail rides from his land. The plaintiff stated that before this second cease and desist order, the town had not taken any action to stop him from stabling his horses on his land. Additionally, the plaintiff stated that since he began conducting trail rides from Champlins, the town has taken no action to prevent him from running such rides from that location.
Several remonstrants also appeared in person in opposition to the plaintiff's appeal and others submitted written objections. These people all expressed general opposition to both the operation of the trail riding business from either location (Champlins Marina or the plaintiff's land), and to the plaintiff stabling his horses on his property in furtherance of this business venture.
After the hearing, the Board upheld the cease and desist order of the building inspector dated April 14, 1989. The Board found that under the provisions of both the zoning ordinance enacted on March 4, 1989 and the provisions of the previous ordinance, that conducting a commercial business within a Residential A zone is a prohibited activity. Further, the Board found that there was no evidence presented which indicated that the use claimed by the plaintiff was ever a conforming use of the premises under the prior ordinance. Thus, the Board found a nonconforming use was not created by adoption of the revised zoning ordinances on March 4, 1989. From that Zoning Board decision, this appeal followed.
II. Appellate Review of a Municipal Zoning Board Decision
The Superior Court review of a zoning board decision is governed by R.I.G.L. 1956 (1991 Reenactment) § 45-24-20(D), which provides in pertinent part as follows:
 45-24-20. Appeals to Superior Court
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing a zoning board decision, the Superior Court ". . . is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board decision was supported by substantial evidence in the whole record." Apostolou v. Genovesi, 120 R.I. 501, 508,388 A.2d 821, 825 (1978). This requisite "substantial evidence has been further defined as ". . . more than a scintilla but less than a preponderance." 120 R.I. at 500, ". . . some relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 120 R.I. at 510.
The plaintiff contends that the Board's action upholding the cease and desist order issued by the town building inspector on April 14, 1989 was error. The crux of his argument is that the stabling of horses on his land was a legal use prior to the enactment of a new zoning ordinance on March 4, 1989 and is therefore protected as a legal nonconforming use under the new ordinance.
Conversely, the defendants claim that both the practice of conducting trail rides from the plaintiff's land and the stabling of horses in his barn were not conforming uses under the zoning ordinance in effect during 1987. Hence, the defendant argues that such uses cannot be legal nonconforming uses under the new ordinance, because they were never legal in the first place.
III. Discussion
An examination of the entire record reveals that the Board acted properly. The plaintiff testified that he has stabled horses in the barn on his property from the spring of 1987 to the present. He additionally stated that he used those horses during that time period for a trail riding business. Article III, Sec. 1(A)(2) of the Town of New Shoreham Zoning Ordinance in effect during 1987 clearly states that property located in a Residential A zone can be used for the "raising of animals or fowl for home use or for sale, providing that such use is not offensive to surrounding owners." It is clear that the plaintiff was not raising the horses in question for "home use or sale," but rather for use in a trail riding business. Hence, this Court finds that prior to the enactment of the new zoning ordinance in March of 1989, stabling of horses for commercial purposes was not a legal use in a Residential A zone.
In order for an activity to be protected as a legal nonconforming use, it must be shown that the use existed lawfully prior to the effective date of a new zoning ordinance and has continued unabated since that time. Town of Scituate v.O'Rourke, 103 R.I. 499, 239 A.2d 176 (1968). Since the activity in question, the stabling of horses for commercial purposes, did not exist lawfully prior to the effective date of the new ordinance on March 4, 1989, the use could not be protected as a nonconforming use under the new ordinance. Hence, the plaintiff would have to have been in compliance with the new zoning ordinance in order for the use to be considered legal by the board. The New Shoreham Zoning Ordinance enacted on March 4, 1989 clearly states that owners of land located in a Residential A zone must obtain a special exception to use their land for the purpose of stabling horses. There was no evidence before the Board that the plaintiff had obtained a special exception to use his land for this purpose. Thus, the Board was correct in upholding the building inspector's cease and desist order as it applied to the stabling of horses.
It should be additionally noted that the cease and desist order in question also commanded the plaintiff to cease conducting trail rides outside of his premises. Although the plaintiff testified that he initially stopped such activities after the Zoning Board upheld the first cease and desist order, he stated that he had resumed this activity in a few weeks prior to the hearing for the second cease and desist order. The Town of New Shoreham Zoning Ordinance in effect during 1987 clearly lists the types of uses permitted in a Residential A zone, none of which are even remotely similar to the business of offering horse or trail rides. Hence, this use did not qualify as a legal nonconforming use under either ordinance. Because this use was not permitted by the 1989 ordinance and did not qualify as a proper nonconforming use by virtue of the 1987 ordinance, the Board was similarly correct in upholding the cease and desist order dated April 14, 1989 as it applied to the operation of a trail riding business on land located in a Residential A zone.
After review of the entire record, this Court finds that the decision of the board is supported by reliable, probative, and substantial evidence of the whole record, is not arbitrary or capricious, and is not characterized by any abuse of the board's discretion. Accordingly, the decision of the board must be and hereby is affirmed.
Counsel shall submit the appropriate order for entry.